592 A.2d 1353

## THOMAS H. ROSS INC.

v.

## Howard A. SEIGFREID t/d/b/a Howard A. Seigfreid Excavating, Appellant.

## THOMAS H. ROSS INC., Appellant,

v.

## Howard A. SEIGFREID t/d/b/a Howard Seigfreid Excavating.

Superior Court of Pennsylvania.

Argued April 16, 1991.

Filed June 20, 1991.

John T. Robinson, Middleburg, for appellant (at 2534) and appellee (at 2872).

Robin S. Martin, Milton, for appellant (at 2872) and appellee (at 2534).

Before MONTEMURO, BECK and TAMILIA, JJ.

TAMILIA, Judge:

Howard A. Seigfreid, t/d/b/a Howard Seigfreid Excavating (Seigfreid), and Thomas H. Ross Inc. (Ross), bring these cross-appeals from the August 29, 1990 judgment awarding both parties contract damages plus interest.

This case arose out of a series of contracts between Ross, a general contractor, and Seigfreid, a subcontractor and owner and operator of an excavating business. In his complaint, Ross alleged Seigfreid had breached two con-

tracts related to housing projects known as Williamstown and Williams Township and requested general and liquidated damages. Seigfreid filed an answer and counterclaim requesting general damages alleging Ross' breach of the aforesaid contracts plus an alleged breach by Ross on the contract for the project known as Pine Meadows. Subsequent to a nonjury trial, held April 8 and 9, 1987, judgment was entered for Ross in the amount of $5,671.47 plus interest on the Williamstown project; judgment for Ross in the amount of $31,711.23 plus interest on the Williams Township project; and judgment for Seigfreid in the amount of $10,241.70 plus interest on the Pine Meadows project. The amount awarded Seigfreid reflects a set-off of $8,106.25 owed to a third party covered under the indemnity provisions of the contract between the parties. The court ruled the interest on the awards would run from May 21, 1982, the date of completion of contractual obligations, to April 9, 1987, the completion of trial. Seigfried's post-trial motions were denied by Order dated August 7, 1990, which stated the interest would be calculated as stated in the award and would also run beginning July 18, 1989, the date of the awards. The awards were reduced to judgment on August 29, 1990.[1]

Seigfreid avers the court erred by awarding liquidated damages on the Williamstown and Williams Township projects. He also contends the court erred by setting off the claim of a third party against its finding in his favor regarding the Pine Meadows project. Finally, Seigfreid argues the court committed error by not granting his motion for judgment n.o.v.

■ Seigfreid contends the language of the liquidated damage clause of each contract, set forth in pertinent part

---

1. While the court used the terms judgment and verdict in its Order, the award entered by a court sitting without a jury as a result of a bench trial is properly termed a judgment, verdict being the award handed down by a jury. *See* Black's Law Dictionary, 5th Edition. Further distinction must also be made between the judgment entered by the court which is not appealable until it is officially entered on the record as a final judgment after disposal of appropriate post-trial motions. Pa.R.A.P. 301(d).

below, precluded an award for liquidated damages unless his alleged omissions and Ross' acts occurred at a time when the contract was in effect and Ross gave 24–hour written notice of his intent to declare the agreement in default.

5. In the event the Subcontractor shall at any time, when this contract is in effect, ... or shall fail to pay promptly when due all charges for labor and materials used in the performance of this contract, and/or the Subcontractor shall neglect to perform the work properly or shall fail to perform any provisions of this contract, ... or any other voluntary or involuntary cessation of work by the Subcontractor ... and which, in the judgment of the Contractor is causing or is likely to cause an unreasonable delay in the progress of the work to be done by the Subcontractor, the Contractor shall have the right to declare this Agreement in default after giving the Subcontractor twenty-four (24) hours written notice to the Subcontractor to make good the deficiency and after the failure of the Subcontractor to do so, may terminate the contract ... and shall finish the work by such means as he sees fit, and at the usual and prevailing price of work of this character in the community. If the unpaid balance of the contract price exceeds the expense of finishing the work, such excess shall be paid to the Subcontractor, but if such expense exceeds such unpaid balance, the Subcontractor shall pay the difference to the Contractor. Inasmuch as the injury or damage to the Contractor by reason of the failure of the performance hereunder by the Subcontractor is difficult to determine with any degree of certainty, it is agreed that in computing the expense of completing the work as above provided, there shall be added to such expense a sum equal to ten (10%) per cent of the actual money outlay for such finishing, and such amount is hereby agreed upon, fixed and determined by the parties hereto as the liquidated damages that the Contractor shall suffer by default and not by way of penalty, and that the Subcontractor agrees to pay the

Contractor such excess within thirty (30) days after written demand for such excess has been made by the Contractor upon the Subcontractor. . . .

(Defendant's Exhibit # 1.) Seigfreid argues Ross, by failing to pay him in a timely manner, breached the Williamstown and Williams Township contracts before Seigfreid refused to return to the job. With regard to the Williamstown project, Seigfreid testified and the trial court found he was aware the excavation work was behind schedule in the fall of 1981 and was notified by Ross, by mailgram, that on October 30, 1981, another subcontractor would be hired to complete the project due to the delay. Seigfreid testified there were periods between August, 1981, and October, 1981, when his equipment was not present on the job site. He also testified he received his last monthly payment from Ross in October, 1981. Seigfreid left the job site in December, 1981, and did not return. The court concluded, inter alia, Ross did not in any way cause Seigfreid's failure to complete the work required under the contract. Rather, the court held the evidence presented supported a finding Seigfreid first breached the contract between the parties by failing to complete the work according to schedule. We find it was proper to hire another company to do the excavation when Seigfreid failed to do so, and Ross' claim for liquidated damages was fully supported by the contract signed by the parties. As to the Williams Township project, the court made findings and conclusions similar to those stated supra. The court made no finding Ross breached the contract by failing to pay Seigfreid in a timely fashion for work completed.

In reviewing the findings of a trial judge, the successful party is entitled to have evidence viewed in the light most favorable to him, and all evidence and proper inferences favorable to him must be taken as true and all unfavorable inferences rejected, especially where the credibility of witnesses had to be weighed by the court. *Short v. Metropolitan Life Ins. Co.*, 339 Pa.Super. 124, 488 A.2d 341 (1985). Findings of fact of a trial judge have the force and effect of

a jury verdict and, based upon the evidence, will not be disturbed on appeal unless they are manifestly erroneous. *Id.* at 127–128, 488 A.2d at 343. With these standards in mind, we find the court had sufficient evidence upon which to find Seigfreid, not Ross, first breached the contracts spawning this lawsuit by his dilatory, irresponsible conduct, and we will not disturb the court's findings of fact.

■ This Court having found there to have been no breach by Ross, Seigfreid argues in the alternative Ross did not comply with the terms of the contract so as to enable him to demand liquidated damages. Specifically, Seigfreid contends Ross failed to introduce at trial any evidence to satisfy the contractual requirement of paragraph five, *supra*, necessitating written notice of an intention to declare a default and allowing appellant 24 hours to make good the deficiency.

A review of the evidence shows Seigfreid did receive notice of nonperformance with regard to the Williamstown and Williams Township projects. As stated above, Seigfreid was aware he was behind schedule and attended a meeting designed to remedy that very situation in early October, 1981. One month later, on October 31, 1981, he was informed by mailgram that another excavator would be called into the Williamstown project on November 2, 1981, due to his delay in completing the work. Despite such knowledge and notice, Seigfreid took no positive steps to complete the job in a timely fashion. Ross' efforts to ascertain Seigfreid's plans to complete the Williamstown project after having sent the mailgram were futile, Seigfreid having left the site in December, 1981, and having made no attempt to respond to Ross' attempts to communicate until March, 1982. Liquidated damages were accordingly appropriate with regard to the Williamstown project.

■ Concerning the Williams Township project, no formal notice was sent by Ross to inform Seigfreid of his intent to claim a default. We agree with the trial court, however, that despite any alleged informality, sufficient

notice was supplied to Seigfreid to allow the imposition of liquidated damages. The delay at Williams Township was discussed at the same October, 1981, meeting in which the Williamstown delays were discussed. In a letter dated October 7, 1981, Ross outlined the scheduling problems with which he was faced and also mapped a plan of action to correct the delays. Any subcontractor unable to live within the time frame set forth in the plan was to notify Ross to enable him, if need be, "to solicit other contractors." Seigfreid testified he did not respond to the letter despite being aware the project was behind schedule. The court found Seigfreid was contacted, in vain, on more than one occasion by Ross in order to ascertain his intentions. Such obvious repeated notice by Ross, though not actual, was assuredly constructive and sufficient under the contract to notify Seigfreid of Ross' intent to declare a default and assess liquidated damages against Seigfreid for nonperformance of contractual duties.

■ Finally, Seigfreid contends the liquidated damages assessed were punitive and unnecessary arguing actual damages could have easily and specifically been determined. As stated recently by our Commonwealth Court:

In determining whether a liquidated damages clause is an unenforceable penalty, one must examine the entire contract in light of its text, what it is about, the parties' intentions, and the facility of measuring damages or lack thereof, so as to arrive at an equitable conclusion.

PennDot v. Interstate Contractors Supply Co. 130 Pa. Cmwlth. 334, 337, 568 A.2d 294, 295 (1990). Seigfreid was, or should have been, very aware of the ramifications of the liquidation clauses, having previously entered several contracts with identical provisions. Seigfreid was not, as he would have this Court believe, a naive entity dealing with the ruthless general contractor. Rather, he presented himself as a knowledgeable subcontractor who had been in the excavating business since 1966, incorporated since 1978 and, at the time of trial, working six or seven jobs for Ross. Seigfreid understood the subject matter of the contracts,

and we find he intended to be bound by the documents requiring him to complete the projects by certain dates or face the imposition of liquidated damages. The damages were not a penalty but rather a consequence of Seigfreid's default. *See Finkle v. Gulf & Western Manufacturing Co.*, 744 F.2d 1015 (3rd Cir.1984); *Doolan v. Doolan Steel Corp.*, 591 F.Supp. 1506 (D.C.Pa.1984), *affirmed sub nom, Coutinho Caro & Co., Inc. v. Doolan*, 772 F.2d 894 (3rd Cir.1985).

■■■■ Seigfreid's second general assertion of error is the court erred when it found in his favor regarding the Pine Meadows project in the amount of $18,347.95, but then set off against this amount the claim of a third party material man, who was hired to complete work Seigfreid abandoned, in the amount of $8,106.25. Seigfreid avers the court should not have found Ross was entitled to indemnification because as of the April 7, 1987 trial date, the third party had no legally enforceable claim to pursue against either party due to the running of the applicable four-year statute of limitations. This argument is without merit.

The general contractor/Ross' right to require payment of project debts to suppliers was set forth in each subcontract:

2. The Subcontractor shall at all times indemnify and save the Contractor harmless from all claims and liens for labor performed and materials furnished on this job and from any or all damage, loss, or expense that may be incurred on this job and from any or all damage to its property or by reason of any injuries or death to its employees or third persons, or from any damage to the property that may be caused by or result from the performance of the work by the Subcontractor as outlined herein. The Subcontractor agrees, if requested by the Contractor, to furnish invoices, receipted by his material suppliers and/or subcontractors before payments are made to him.

(Defendant's Exhibit # 1.) This indemnification provision does not require that the subcontractor and the material man engaged to complete Seigfreid's unfinished project

institute an action against either Seigfreid or Ross. Therefore, the statute of limitations argument is not pertinent. The general contractor of a job is ultimately responsible for all subcontractors, and if one subcontractor fails to pay for labor and materials furnished on the job as part of the subcontract, the general contractor must fulfill these obligations. The fact Ross had not paid the third party material man as of the commencement of the trial is of little moment. Also, as argued in Ross' brief, disregarding the contractual aspects of the matter under consideration, Ross has a common law right to indemnification, as a party, secondarily or vicariously liable on a claim, is entitled to indemnity for any damages or losses he may be compelled to pay by reason of the conduct of a person who is primarily liable. By the use of the indemnification provision and the set off ordered by the court, the money found to be owed by Ross to Seigfreid for the Pine Meadows project merely flowed through Seigfreid's hands to the third party rightful recipient who completed the project when Seigfreid defaulted. Based on this discussion, we find the court properly offset Seigfreid's award in adherence to the contract between the parties.

Lastly, Seigfreid contends the trial court erred by failing to grant his motion for judgment n.o.v.

■ The sole duty of this Court in reviewing a denial of judgment n.o.v. is to decide whether there was sufficient evidence to sustain the verdict, while granting the verdict winner the benefit of every favorable inference reasonably to be drawn from evidence and rejecting all unfavorable testimony and inferences. *Cipriani v. Sun Pipe Line Co.,* 393 Pa.Super. 471, 574 A.2d 706 (1990). Extensive evidence was presented at trial regarding Seigfreid's lack of work during the periods in question and Ross' unsuccessful attempts to win Seigfreid's cooperation and complete the jobs in a timely manner. We conclude there was sufficient evidence to find Seigfreid breached the Williamstown and Williams Township contracts and to justify Ross' hiring another subcontractor to complete the work. A review of

the evidence and the contracts shows it was proper to assess general and liquidated damages on both projects. Also, this Court finds Ross had a right to claim as a set off against Seigfreid's award, under the indemnity provision of the Pine Meadows contract, the $8,106.25 owed to a third party/material man. Judgment n.o.v. was properly denied.

In his cross-appeal, at 2872 Philadelphia, 1990, Ross argues the court erred by failing to assess interest on the awards in his favor for the entire period between May 21, 1982, the date of completion of the contractual obligations, and the date judgment was entered on August 29, 1990. As explained above, the court initially ordered interest be assessed at six per cent from May 21, 1982 through April 9, 1987, the final day of trial. In the August 7, 1990 Order denying post-trial motions, the court ordered interest on the Williamstown and Williams Township judgments also be assessed from the date the judgments were entered, July 18, 1989, forward. The court suspended interest from the close of trial, April 9, 1987, through the date of final judgment, July 18, 1989, reasoning to do otherwise would penalize the parties for a delay occasioned by the court.

Ross argues there is no provision in the laws of this Commonwealth for an interruption in the accrual of interest and avers he was unduly penalized both by the inordinate delay in the payment of the obligation and by the court's ruling denying interest during the period the case awaited decision.

Seigfreid, on the other hand, contends the court erred by awarding Ross *any* prejudgment interest as an entitlement, arguing for such interest to be awarded the sum due and owing must have been liquidated. *Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941 (3rd Cir.1984).

This Court finds that in contract cases, prejudgment interest is awardable as of right. *Fernandez v. Levin*, 519 Pa. 375, 548 A.2d 1191 (1988); *Daset Min. Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584 (1984). We find there to be no statutory or case law support for the suspension of prejudgment interest during

the time period between the close of trial and the rendering of a final judgment which, in this case, is more than two years. During this two-year period, Seigfreid appellant had use of the money rightfully belonging to Ross and had the opportunity to earn interest as well. Even if the delay was due to the court's own neglect in dealing with the case in a timely fashion, it does not have the discretion to suspend the accrual of prejudgment interest on a contract action awardable as of right.[2]

For these reasons we affirm as to case No. 02534 Philadelphia, 1990, and reverse and remand for the recalculation of interest, in accord with this Opinion, case No. 02872 Philadelphia, 1990.

Judgment affirmed in part and reversed in part.

Jurisdiction relinquished.

2. While not applicable to this case, the recent holding in *Schrock v. Albert Einstein Medical Center*, 527 Pa. ——, 589 A.2d 1103 (1991), interpreting Rule 238 which applies delay damages in actions for bodily injury, death or property damage, cannot be ignored as an analogue. There, the Supreme Court adopted language by the trial court which provided that where neither party was responsible for the delay, delay damages must cover the entire period until entry of judgment. The reasoning is similar to that adopted here, i.e. the amount due is capable of earning interest throughout the period and the party who was entitled to payment at the outset should have the interest for the entire period of time.