599 A.2d 978

**SPANG & COMPANY**

**v.**

**USX CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed Oct. 15, 1991.

Reargument Denied Dec. 24, 1991.

Richard F. Lerach, Pittsburgh, for appellant.
William T. Marsh, Butler, for appellee.

Before OLSZEWSKI, MONTEMURO and HOFFMAN, JJ.

MONTEMURO, Judge.

This is an appeal from an order entering judgment against appellant USX (formerly United States Steel Corp.) in the amount of $2,805,854, together with prejudgment interest at the rate of 6% to be calculated from February 28, 1982, the date of appellant's termination of a contract between the parties.[1]

The contract in question provided for appellee to process [2] the slag produced as a by-product of appellant's steelmaking facility in Lorain, Ohio for resale by appellant. The agreement had been entered into in June of 1960, and continued with modifications and extensions until 1982, when appellant unilaterally terminated the agreement. During the life of the contract, appellant was to recompense appellee for slag prepared and ready for delivery by appellant to customers, but at termination payment was due for stockpiled material. After appellant declined to compensate appellee for the unsold slag in inventory, suit was commenced in the Court of Common Pleas of Butler County. After a two week non-jury trial in 1984, the court initially entered an order finding in favor of appellant and against appellee, a result which was reversed after motions for post-trial relief were filed and briefed, and the court had heard oral argument. The revised disposition denied appellant's post-trial motions, and granted appellee a new trial on the issue of damages alone, as the court found itself unable, on the evidence educed at trial, to determine how much slag remained in appellant's possession, and thus unable to com-

1. The contract was, more precisely, initiated between appellant and Ferroslag, a wholly owned subsidiary of appellee, and its predecessor in interest.

2. Processing involved removing all metallic residue, and crushing the slag into various specified sizes, after which appellee was to load and weigh the processed product for sale to appellant's customers. Pursuant to the agreement, appellee erected a processing plant at the Lorain Works, in an area known as the East Fill, the dump site for slag, and dismantled the structure upon termination.

pute damages. Appellant successfully appealed to this court[3]; however, on appellee's petition for allowance of appeal the Supreme Court of Pennsylvania affirmed[4] the trial court, remanding for further proceedings.

Upon remand, after a second two week trial limited to the damages issue, the trial court entered an order awarding damages to appellee in the amount heretofore noted plus prejudgment interest from June of 1982. This appeal followed.

Appellant has ostensibly presented us with five multipartite issues. However, these claims may more conveniently be grouped into four, as two issues concern specific evidentiary matters. We will, therefore, address appellant's assertion seriatim, although not necessarily in the order presented.

Appellant argues that appellee's claims are barred by the six year statute of limitations applicable to contract actions, 42 Pa.C.S.A. § 5527, as the course of dealing between the parties was governed by a series of discrete agreements with varied provisions rather than a continuous contractual arrangement modified over time. However, we first note that appellant's description of its relationship with appellee is contradicted by that of our Supreme Court, which recounted the parties history as follows:

> USS and Spang (through Ferroslag) entered into a contract in June, 1960, which through extensions and with various modifications, lasted until termination on February 28, 1982.

*Spang and Co. v. U.S. Steel Corp.*, 519 Pa. at 17, 545 A.2d at 862.

As appellee correctly points out, a decision by an appellate court on a prior appeal becomes res judicata, the law of the case, and therefore unamenable to further review. *Roskwitalski v. Reiss*, 338 Pa.Super. 85, 487 A.2d

---

**3.** *Spang & Co. v. United States Steel Corp.*, 358 Pa.Super. 543, 518 A.2d 273 (1986).

**4.** *Ibid*, 519 Pa. 14, 545 A.2d 861 (1988).

864 (1985) *alloc. dn.*, 514 Pa. 619, 521 A.2d 933. Moreover, even were the supreme court's description not definitive, for the reasons that follow, appellant has waived any challenge to its liability under the contract.

■ After the 1984 trial, appellant filed post-trial motions containing issues of liability, including the statute of limitations, which were duly addressed by the trial court in its Opinion and Order of April 16, 1985 [5]. However, on appeal to this court, no liability issues were presented, only various arguments, repeated now, asserting that the trial court erred in granting a new trial on the issue of damages. As the supreme court pointed out in its hearing of this case, "an appeal may be taken from any order in a civil trial awarding a new trial. Pa.R.A.P. Rule 311(a)(5)." *Id.*, 519 Pa. at 24 n. 1, 545 A.2d at 865 n. 1.

■ Normally, where a challenge is posed to the grant of a new trial on post-verdict motions, the pertinent inquiry is whether the trial court has abused its discretion. *Id.*; *Nehrebecki v. Mull*, 412 Pa. 438, 194 A.2d 890 (1963). The exception to this rule is that where a single reason is given by the trial court to justify its award of a new trial, the legal merit of that reason is the focus of the analysis, rather than the discretion of the court, *see, Penneys v. Segal*, 410 Pa. 308, 311–12, 189 A.2d 185, 187 (1963). However, this rule places no restriction on a litigant's ability to challenge another aspect of the case unrelated to the award of a new trial. Here, in addition to granting a new trial on the issue of damages, the court also decided the liability question adversely to appellant. This determination was reviewable, since a favorable decision as to responsibility would have obviated the necessity for a new trial. *Compare, Kunz v. City of Titusville*, 373 Pa. 528, 97 A.2d 42 (1953). However, as appellant failed to pursue relief via

**5.** The limitations question was addressed at some length; the remaining liability issues were dismissed on the basis that appellant had admitted, in a letter of December 13, 1981, the existence of a stockpile of at least 480,000 tons of slag.

these issues on prior appeal, the opportunity was lost. They are not now properly before us.

There are two major points around which several of appellant's remaining issues are framed. The first of these concerns the occurrences at retrial, and centers on the argument that the trial court erred as a matter of law in permitting appellee to take additional discovery, and to offer additional evidence in support of the damage claim. This leniency was, it is contended, contrary to the finding of our Supreme Court that sufficient evidence existed in the record of the first trial for calculations of loss to be made, although appellant also insists that the evidence presented both at trial and at retrial was inadequate to prove any damages. In this same regard, appellant also argues, somewhat quixotically, that the only new evidence was in the form of certain reports recording the amount of appellee's daily production of slag, which evidence appellant also complains was ignored by the trial court. Finally, appellant requests that the verdict be reformed on the basis of these reports.

Addressing these arguments singly, we first note that with regard to appellant's claim that the trial court committed an error of law in permitting additional discovery and evidence at retrial, again the issue is res judicata. In its Opinion, our Supreme Court found "no abuse of discretion or error of law in the [trial] court's grant of a new trial limited to damages." *Spang, supra*, 519 Pa. at 29, 545 A.2d at 868. The decision thus sanctioned, and quoted by the Court concluded that

"Justice can best be served if the trial continues on the sole issue of damages," so that "the parties [can] develop and present evidence that is available as to the amount of slag that Spang processed and left on the property, ready for sale and delivery to customers of U.S.S. The cost of loading and weighing the slag would also be established."

*Id.*

Even had the propriety of the trial court's action not already received the supreme court's imprimatur, as a prac-

tical matter the course taken was a necessary sequel to the determination that remand should occur. If indeed, as appellant at one point suggests, there were found in the record enough evidence to enable the trial court to determine damages, no return to the trial level for further proceedings would have been necessary or desirable, as an order for the trial court to perform its calculations on the available data could easily have sufficed. However, no such order issued; instead a new trial was approved, with the specific notation that "The trial court's grant of a new trial ... gave both parties the opportunity to present additional evidence to permit a more accurate calculation of the exact amount of processed slag in inventory on February 28, 1982." *Id.* A clearer blueprint for the trial court's actions cannot be found, making appellant's claim unpersuasive at best.

■ The same may be said of appellant's insistence that no claim for damages had at any point been made out at all. This issue too is res judicata despite the amazement appellant has expressed at the result.

The breaching party, USS, which refused to make any payments for processed slag in inventory, should not be allowed to hang the loss on the injured party, Spang, which clearly demonstrated substantial damages for which USS was responsible, even though those damages were not computed with mathematical precision.

*Id.*

■ Appellant's remaining correlative claim concerns the daily operating reports produced by appellee, which, it is argued, were ignored by the trial court, and which should form the basis for a revised judgment. These business documents, which recorded all processing operations carried on at the East Fill, were kept only for the period January 1, 1972, to the termination date in February of 1982. They therefore do not reflect the amount of slag processed during the total contract period, which began in 1960. Moreover, in addition to the time element, the reports are misleading in that, as the trial court points out, they report

only what was processed. No unsold product in inventory, which includes the slag utilized by appellant for its own internal construction purposes, is carried on appellee's books as an asset, as it was the property of appellant. Damages based solely on the reports would therefore have been totally in error, contrary to appellant's assertion. They were, also contrary to appellant's assertion, utilized by the trial court in computing its total.[6] (T.C.O. at 12).

This claim regarding documents reflects the concern of appellant's second set of issues which questions specific evidentiary findings by the trial court as to the physical slag stock, that is, what portions of it are or are not shown by the (documentary) evidence to be compensable under the terms of the contract, and the total weight of the material. This issue has several components, as items of evidence and credibility of witnesses are both challenged. It is argued that certain accumulations of slag are not compensable under the original 1960 contract, as they were used by appellant for its own internal purposes, namely a buffer zone between appellant's mill and the nearby town[7], and the base for a roadway within the works area. It is also argued that the testimony of certain witnesses should not have been believed as it was inaccurate in its own right, or inaccurate because it was based upon faulty assumptions.

All of these allegations revolve around appellant's general predicate that the trial court's verdict was based on insufficient, suspect or compromised evidence.

Our appellate role is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. *Brenna v. Nationwide Insurance Co.,* 294

6. These documents were not presented at the 1984 trial as they were thought to have been lost. Instead, monthly summaries derived from them, and also kept in the usual course of business, were used as a replacement.

7. The necessity for this buffer was removed in 1971, when appellant changed its manufacturing method from the open hearth to the basic oxygen process, the latter of which apparently produces less dust and noise than the former.

Pa.Super. 564, 567, 440 A.2d 609, 611 (1982; *Metz Contracting, Inc. v. Boxer Heights, Inc.*, 261 Pa.Super. 177, 180, 395 A.2d 1373, 1375 (1978). The findings of the trial court in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. *Eddystone Fire Co. No. 1 v. Continental Insurance Co.*, 284 Pa.Super. 260, 263, 425 A.2d 803, 804 (1981). When an appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Brenna v. Nationwide Insurance Co., supra* 294 Pa.Super. at 567–68, 440 A.2d at 611; *Courts v. Campbell*, 245 Pa.Super. 326, 331, 369 A.2d 425, 428 (1976).

*Mancini v. Morrow*, 312 Pa.Super. 192, 196–7, 458 A.2d 580, 582 (1983).

After recognizing that "While neither Spang nor USX kept an accurate, complete inventory record of the processed slag at the East Fill the parties knew from the daily and monthly operating reports the approximate amount of slag that had been processed," (T.C.O. at 7), the trial court's computation of damages utilized as a starting point the total amount of processed slag recorded by appellee as having been produced and delivered to appellant during the contract period, that is 7,731,468 tons of material. Of this, appellant was found to have accepted and sold to third parties 75.7% or 5,849,378 tons. The remainder, 1,882,090 was reduced by 365,500 tons which had been processed twice [8] according to the testimony of appellee's witnesses. The final figure was supported by testimony of experts employed by appellee who performed volumetric studies of the physical accumulations of slag present on

8. It was the absence of information concerning the double processing which contributed materially to the trial court's original inability to calculate damages.

appellant's property, using aerial photography, topographic maps and personal observation.[9]  It included all of the material stockpiled in heaps in the East Fill, as well as the material used for the buffer zone, roadways, and dikes appellant required in its operations.  The court's reasoning was that all of the material used in these constructions was a asset of appellant's, and as such compensable at termination.

As to the price and weight of the material, the trial court adopted the price fixed by the parties, $2.219 per ton, prior to termination.  The weight selected, 148 lb. per cubic foot, was derived from appellant's own contemporaneous sales literature, although the contract had assigned 160 lb. per cubic foot as the weight of the slag.  The court chose the lighter weight, even though with time the material becomes compacted (rodded) and heavier.  Appellant was therefore afforded advantages in the calculations which it now refuses to acknowledge.

Finally, the court concluded that the cost of weighing and loading the slag, which under the terms of the original contract is to be deducted from the tonnage price, was $.19 per ton.  Appellant argues that this is unprovable, and that no record evidence exists of such a cost.  However, as appellee points out, there are both exhibits and testimony in the record establishing this amount as the cost actually quoted to appellant by appellee and another contractor immediately prior to termination.  We find that in this too, especially as it is uncontradicted, the trial court's discretion was properly exercised.

All of the conclusions drawn by the trial court find adequate support in the record, despite appellant's complaints.  Moreover, we find no reason to disagree with any of the court's findings, since, most tellingly, appellant's witnesses were used only to attack the conclusions drawn by appellee's experts.  No independent calculation of the

9.  The actual numbers arrived at by the experts were greater than, although consistent with those testified to by appellee's chief executive officer.

amount of slag left by appellee on its premises at termination was offered by appellant at any time. As our Supreme Court has stated, albeit in another context:

> The failure to produce evidence which would properly be part of the case and which is within the control of a party whose interest it would naturally serve, militates strongly against such party and raises in the absence of explanation an inference of fact that it would be unfavorable to him. *Peters v. Shear*, 351 Pa. 521, 41 A.2d 556 (1945); *Hall v. Vanderpool*, 156 Pa. 152, 26 A. 1069 (1893).

*Piwoz v. Iannacone*, 406 Pa. 588, 596, 178 A.2d 707 (1962).

Credibility was here, as always, a matter for the factfinder, who is free to believe any portion or none of the evidence presented, *Aletto v. Aletto*, 371 Pa.Super. 230, 537 A.2d 1383 (1988).

Appellant's final contention is that, for several reasons, the trial court erred in awarding prejudgment interest, and that any such award should be limited to simple rather than compound interest. First, it is argued that for interest to be imposed as damages, the sum due and owing must have been liquidated. This assertion rests on the previously made assumptions that neither the volume of slag for which payment is due, nor the costs of weighing and loading are ascertainable. As noted above, we find these assumptions unfounded. Moreover, our Supreme Court has held that

> For over a century it has been the law of this Commonwealth that the right to interest upon money owing upon contract is a legal right. *West Republic Mining Co. v. Jones and Laughlins*, 108 Pa 55 (1889). That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment.

*Fernandez v. Levin*, 519 Pa. 375, 379, 548 A.2d 1191, 1193 (1988).

This court in *Thomas H. Ross, Inc. v. Seigfreid*, 405 Pa.Super. 558, 592 A.2d 1353 (1991), where the same conten-

tion, lack of liquidated damages, was advanced, has most recently held that "in contract cases, prejudgment interest is awardable as of right," *Id.*, 405 Pa.Superior Ct. at 569, 592 A.2d at 1359. No exception has been carved out where damages must be determined at trial. This same proposition has been enunciated before, notably in *Frank B. Bozzo, Inc. v. Electric Weld Division of the Fort Pitt Division of Spang Industries, Inc.*, 345 Pa.Super. 423, 498 A.2d 895 (1985), where we held that

> The justification for an award of prejudgment interest is that because the defendant knew or at least could have learned the amount of his debt, he should have tendered that amount to the plaintiff. Since he did not, and by failing to do so caused the delay of litigation, he has deprived the plaintiff of the use of that amount from the date of the breach to the date of the satisfaction of the judgment.

*Id.*, 498 Pa.Superior Ct. at 430, 498 A.2d at 898.

This holding thus summarily dispenses with the corollary claim made by appellant that prejudgment interest was improper because, not being based on liquidated damages, it was discretionary with the trial court, and that discretion was abused because the fault for nonpayment lay with appellee, whose exorbitant demands appellant righteously rejected.

Finally, appellant argues that any award of prejudgment interest should have been simple interest only, not compound. We are constrained to agree. Contract cases in general, where damages are known or, as here, ascertainable through mathematical calculations, are limited to a 6% rate of simple interest. *See, Fernandez, supra; Penneys v. Pennsylvania R.R. Co.*, 408 Pa. 276, 183 A.2d 544 (1962). The statute governing the definition of "legal rate of interest," where that term is used in any statute or document, 41 P.S. § 202, specifies only the rate set, that is 6%, not the method of accumulation. Although as appellee points out, there have been cases in which compound interest was awarded, *see, e.g., Sack v. Feinman*, 489 Pa. 152,

413 A.2d 1059 (1980), they provide us with no standard justifying a deviation from the general rule in this case.

There is one final reason for our decision: had the contract under which the parties operated not have been terminated, appellee would have received no compensation at all for the large amounts of slag stockpiled in appellant's construction projects, that is, the dikes, roadways, and buffer zone. Under such circumstances, there is no reason to warrant abrogating the normal practice.

Judgment affirmed in part and vacated in part.