NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4343
_____

ECEM EUROPEAN CHEMICAL MARKETING B.V.,

Appellant

v.

THE PUROLITE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-03078)
District Judge:  Hon. Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
November 9, 2011

Before:  SCIRICA, SMITH, and JORDAN, *Circuit Judges*.

(Filed: November 14, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This case arises out of a contractual dispute between ECEM European Chemical Marketing, B.V. ("ECEM") and The Purolite Company ("Purolite") for the sale of an organic compound called styrene monomer ("styrene"). ECEM appeals orders of the United States District Court for the Eastern District of Pennsylvania: (1) granting Purolite's motion in limine to exclude statements made by the parties during compromise negotiations; (2) denying ECEM's motion for a new trial; (3) granting Purolite's request to receive prejudgment interest at a rate of 6% per annum; and (4) reducing ECEM's award to include only the amount due in compensatory damages as a result of Purolite's breach. For the following reasons, we will affirm.

## I.    Background

ECEM is a company that distributes raw materials and is located in the Netherlands. Purolite is a Delaware corporation with its principal place of business in Pennsylvania. On December 16, 2003, Purolite entered a contract with ECEM (the "2003 Contract") under which ECEM would deliver a specified amount of styrene monthly to Purolite's factory in Victoria, Romania. The monthly amount was to be delivered by rail in two shipments. The 2003 Contract also provided that ECEM would bear all of the costs and risks of delivery to the Victoria factory. Thereafter, in March 2004, the parties agreed to increase the delivery amount to three shipments per month via rail through the Spring of 2005 (the "2004 Contract").

In November 2004, Purolite received only one shipment of styrene because ECEM mistakenly sent two of the three railcars meant for Purolite's Victoria factory to Ploesti,

2

Romania. On December 10, 2004, Purolite's Materials Manager, Brian Wareham, sent

an email to ECEM containing the following message:

> [T]his is unacceptable. We know that these [railcars] have been in Ploesti
> since December 2nd. To put it politely, Schenker [ECEM's agent] needs to
> pull their finger out and make things happen. We have a maximum of one-
> week styrene left. If, in the circumstances, we run out of material, a
> considerable compensation claim will be lodged with whoever is
> responsible for the delay.

Purolite exhausted its supply of styrene on December 14, 2004, and shut down its

production lines for a one-week period. It allegedly sustained approximately

$498,000.00 in damages as a result of that shutdown. The two misrouted railcars

eventually made it to Victoria on December 21, 2004.

Following the misshipment, the parties' relationship deteriorated. Purolite's

General Manager directed his employees to withhold payment for the two late shipments

in the amount necessary to offset the losses Purolite sustained between December 14 and

December 21, 2004. A dispute arose between the parties concerning whether Purolite

was obligated to pay each invoice within ninety days of delivery or ninety days of the

date of the initial invoice. Finally, ECEM declined to do business with Purolite, based

upon its belief that "[Purolite] stopped paying their invoices that were due." (SA at 50.)

Between January and June 2005, the parties began an email correspondence aimed

at resolving their differences. During those discussions, ECEM consistently asserted that

Purolite was contractually obligated to pay for each of the outstanding invoices due under

the terms of the 2003 Contract. ECEM claims that, during those conversations, Purolite

3

never stated that it suffered losses as a result of the delayed shipment of styrene in November 2004.

On June 28, 2005, ECEM filed the present suit, alleging that Purolite breached its contractual obligation by failing to pay for five shipments of styrene between October 13, 2004 and December 9, 2004. ECEM sought compensatory damages in the amount of $449,027.60[1]. It also sought statutory interest at a rate of 8%, plus interest at a "penalty" rate of 3.75% pursuant to a document entitled "General Terms and Conditions of Sale" ("GTCS"), and attorneys' fees, costs, and expenses.[2] Purolite asserted a counterclaim for breach of contract, seeking damages caused by the two missed shipments in November 2004. Purolite also filed a motion in limine seeking to exclude statements made by the parties during their compromise negotiations between January and June 2005.

The District Court granted the in limine motion and the case went to trial. At the conclusion of the trial, and in accordance with the jury's verdict, the Court entered judgment in favor of Purolite and against ECEM for $245,213.00, and in favor of ECEM

---

[1] That figure represents a conversion from Euros.

[2] The GTCS provides, in relevant part, that:

> If the term of payment is exceeded all costs of collection, both in and out of court, shall be for the account of the Buyer
>
> …
>
> If the Buyer has not made payment within 8 days from the invoice date and also in the event the parties agree upon a term of payment of more than 8 days the Buyer shall pay the seller interest at the rate of 4% above the statutory interest.

and against Purolite for $785,725.00.[3]  Significantly, in answering interrogatories on the verdict sheet, the jury determined that the GTCS did not form a part of the 2004 Contract.[4]

After the District Court entered judgment, the parties filed several post-trial motions.  ECEM moved to vacate the District Court's order granting Purolite's motion in limine.  The Court denied ECEM's motion because, it reiterated, under Federal Rule of Evidence 408, "an actual dispute existed [between the parties] in late 2004 and early 2005 beyond mere business discussions over the payment timetable."  (J.A. at 21.)  In particular, the District Court pointed to the following disputes:  (1) "[Purolite's] failure to pay several invoices"; (2) "[Purolite's] contention regarding improper invoicing by [ECEM]"; (3) "[ECEM's] failure to provide [Purolite] with three (3) rail tank cars of styrene in November 2004"; (4) "[ECEM's] rejection of [Purolite's] contract proposal in December [2004]"; and (5) ECEM's decision to prematurely terminate the 2003 Contract.  (*Id.*)  ECEM also moved for a new trial on Purolite's counterclaim for damages.  The Court denied that motion because it determined that "ECEM … failed to show that it

---

[3] While ECEM's award consisted of $405,183.00 in principal, the source of the remaining $380,542.00 is unclear.

[4] The jury responded in the negative to the following interrogatory:  "[d]o you find that Plaintiff ECEM has proven by a preponderance of the evidence that the [GTCS] referred to on the invoices formed a part of the contract with Defendant Purolite Company?"  (JA at 81).

5

suffered substantial injustice or was prejudiced by the [District] Court's ruling[s]" or that "the [District] Court erred in ruling on the pre-trial motions or at trial."[5] (J.A. at 38.)

Purolite also moved to amend the judgment, requesting an award of prejudgment interest in the amount of $80,037.52. The Court granted that motion based on its conclusion that "Purolite succeeded on its counterclaim," and that "[j]ustice requires that Purolite receive prejudgment interest on its award under Pennsylvania law." (JA at 52.) Purolite also moved to amend the judgment entered in favor of ECEM by reducing ECEM's award from $785,725.00 to the principal amount, $405,183.00. The Court granted that motion because it found that "the jury committed a clear error of fact and law" by "returning a verdict in the amount of $785,725.00" even though the jury found "that the GTCS did not form part of the contract" (J.A. 47), and that ECEM was entitled to interest at the statutory rate of 6% under Pennsylvania law.

## II.    Discussion[6]

### A.    *Exclusions of the Parties' Compromise Negotiations*

ECEM argues that the District Court abused its discretion by excluding statements the parties made during their email communications between January and June 2005. Specifically, ECEM contends that because there was no "dispute" between ECEM and Purolite as to the validity or amount of payment due under the 2004 Contract, the District

---

[5] ECEM also moved to vacate the judgment entered on June 10, 2010, in favor of Purolite in the amount of $245,213.00. However, the District Court denied that motion, and ECEM does not appeal that judgment.

[6] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.

6

Court erred by excluding the parties' emails. Purolite responds that the Court did not abuse its discretion because, during the early 2005 time frame in question, Purolite put ECEM on notice of a potential "compensation claim" based on ECEM's failure to deliver two styrene shipments in November 2004, and because the parties were negotiating to avoid a breakdown in their business relationship.

We review for abuse of discretion a district court's decision to admit or exclude evidence. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1341 (3d Cir. 2002). "An abuse of discretion is a 'clear error of judgment,' and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 195 (3d Cir. 2000) (quoting *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 387 (3d Cir. 1997), *overruled on other grounds by Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198 (1999)). However, to the extent the district court's decision depends upon its interpretation of Federal Rule of Evidence 408, our review is plenary. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

Federal Rule of Evidence 408 provides, in relevant part:

(a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim… .

7

Fed. R. Evid. 408. Rule 408 applies where there is a "dispute" between parties, or "at least an apparent difference of view … concerning the validity or amount of a claim." *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525 (3d Cir. 1995). A dispute need not "crystallize to the point of threatened litigation"; a mere difference of opinion will suffice to warrant the exclusion. *Id.* at 527. In determining whether a dispute exists, the facts of each case are critical to a district court's exercise of discretion. *Id.* at 528. Ultimately, when in doubt, the district court should err on the side of excluding compromise negotiations. *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987).

The District Court here did not abuse its discretion by excluding statements made by the parties during their compromise negotiations between January and June 2005. The record reveals that the threat of litigation loomed over the parties as early as December 10, 2004. On that date, Purolite put ECEM on notice by email that if Purolite exhausted its supply of styrene as a result of ECEM's untimely shipment, "a considerable compensation claim [would] be lodged with whoever [was] responsible for the delay." (SA at 82-83.) At a minimum, Purolite's email demonstrates that ECEM was aware that Purolite considered filing a lawsuit to recoup losses it sustained as a result of the late shipments, and that Purolite was serious enough to make its intentions known. In addition, ECEM confirmed the existence of a dispute between the parties when it terminated its deliveries to Purolite, thus showing the failure of negotiations. As the District Court noted, Matthew Rigby, ECEM's Purchasing Agent, sent the following email to Brian Wareham on January 7, 2005:

8

I confirm that *I have put a block on any further styrene deliveries to your plant* until we are up to date with payments. We really mustn't let the payment issue spoil this deal. We are set up to supply your styrene requirements for this year as per our agreement but you have to have to [sic] keep your side of the bargain and pay on time.

(J.A. at 178 (emphasis added).) Finally, the record demonstrates that the General Manager of Purolite's Victoria Plant directed his employees to withhold payment to ECEM for outstanding invoices in the amount necessary to offset the losses Purolite sustained as a result of ECEM's late shipments. Taken as a whole, the evidence demonstrates that a dispute existed between the parties concerning ECEM's cessation of deliveries and how Purolite would recover the losses it sustained as a result of ECEM's tardy shipments in November 2004. Thus, the District Court did not abuse its discretion by granting Purolite's motion in limine.

B. *Reduction of Attorneys' Fees and Interest*[7]

ECEM contends that the District Court also abused its discretion by reducing its award by $376,042.00. ECEM does not dispute that the total amount to which it was entitled for the damages it sustained as a result of Purolite's withholding of payments was $405,183.00, but it asserts that "[t]he award of $781,725 to ECEM was within the exclusive purview of the fact-finder and should not be disturbed absent clear error." (Appellant's Opening Brief at 33 (citing *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 102 (3d Cir. 1993).) Purolite responds that, because the jury found that the GTCS did not form a part of the agreement between the parties, and because no other

_____

[7] Decisions regarding remittitur are reviewed for abuse of discretion. *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir. 1987).

9

evidence introduced at trial supports the portion of ECEM's award that exceeds $405,183.00, the District Court appropriately deducted $376,042.00 from ECEM's total recovery.

As did the District Court, we conclude that, because the evidence adduced at trial does not provide a basis for the portion of ECEM's award that exceeded the $405,183.00 acknowledged to be due, the District Court correctly amended the judgment by reducing ECEM's total recovery by the $376,042.00 over that past due amount. ECEM complains that the overage may represent interest calculated according to the GTCS. However, the jury expressly found that the GTCS was not a part of the contract between ECEM and Purolite, and that conclusion was hardly surprising, since the evidence established that Purolite never saw the GTCS until this suit was filed. None of the evidence introduced at trial, aside from the GTCS, supports an award of attorneys' fees or interest at a statutory rate of 8% or a penalty rate of 4%. Therefore, because the jury awarded ECEM $376,042.00 in excess of its recoverable compensatory damages, and because ECEM failed to introduce evidence at trial supporting that award, the District Court did not err in amending the judgment by reducing ECEM's total award by $376,042.00. Accordingly, we affirm the District Court's remittitur order, reducing the judgment for ECEM by $376,042.00.

C.    *Purolite's Recovery of Prejudgment Interest*

ECEM argues that the District Court abused its discretion by awarding Purolite prejudgment interest because (1) Article 78 of the United Nations Convention on Contracts for the International Sale of Goods ("CISG") does not provide Purolite a right

to recover prejudgment interest on its claim for loss profits; (2) Purolite is not entitled to prejudgment interest under Pennsylvania law because it's breach of contract claim did not seek a definite sum of compensation; and (3) Pennsylvania law does not provide for an award of prejudgment interest upon a claim for damages not derived from a contract of sale. Purolite answers that it is entitled to prejudgment interest because, under Pennsylvania law, a prevailing party is entitled to an award of prejudgment interest as a matter of right, and the CISG does not expressly preclude Purolite from receiving an award of prejudgment interest.

We review for abuse of discretion a district court's decision to require a losing party to pay prejudgment interest, and a district court's findings regarding the appropriate amount of prejudgment interest. *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir. 2008) (reviewing for abuse of discretion district court's decision to award prejudgment interest and district court's calculation of interest); *Gelof v. Papineau*, 829 F.2d 452, 456-57 (3d Cir. 1987) (reviewing for abuse of discretion district court's decision regarding the rate of prejudgment interest). "The district court may exercise this discretion upon 'considerations of fairness' and prejudgment interest may be denied 'when its exaction would be inequitable.'" *Thabault*, 541 F.3d at 533 (quoting *Bd. of Comm'rs of Jackson Cnty. v. United States*, 308 U.S. 343, 352 (1939)).

The parties seem to disagree about whether the appropriate law to apply in determining the award of prejudgment interest is the CISG or Pennsylvania law. However, regardless of whether we apply the CISG or Pennsylvania law, the result is the same. Under Pennsylvania law, the award of prejudgment interest in a contract action is

11

not discretionary; it is a legal right to which a prevailing party is entitled. *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988). Pennsylvania has adopted the Second Restatement of Contracts § 354 (1981), which provides:

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
>
> (2) In any other case, such interest may be allowed *as justice requires on the amount that would have been just compensation had it been paid when performance was due*.

Restatement (Second) of Contracts § 354 (1981) (emphasis added); *see Fernandez*, 548 A.2d at 1193. Where "damages are known or … ascertainable through mathematical calculations," prejudgment interest is limited to the statutory rate of 6% per annum. *Spang & Co. v. USX Corp.*, 599 A.2d 978, 984 (Pa. Super. Ct. 1991); *see* 41 PA. CONS. STAT. § 202.

On the other hand, if, as ECEM argues, the CISG (an international treaty) governs the dispute, then we may treat the dispute as a federal question. 28 U.S.C. § 1331. And, assuming that this case presents a federal question, under our well-established precedent, the District Court had broad discretion in determining whether to award prejudgment interest. *See Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 981-82 (3d Cir. 1984) ("In the absence of an explicit congressional directive, the award of prejudgment interest under federal law is committed to the trial court's discretion, and 'given in response to considerations of fairness[,] … [and] denied when its exaction would be inequitable.'") (quoting *Bd. of Commr's of Jackson Cnty.*, 308 U.S. at 352).

12

Here, the jury determined that ECEM breached its contract by failing to deliver shipments of styrene in a timely manner, and it awarded Purolite $245,213.00 in compensatory damages. Purolite is thus a prevailing party in this litigation. The District Court was therefore within its discretion in awarding Purolite prejudgment interest. Where, as here, both the plaintiff and the defendant recover damages due to the breakdown of a contractual agreement, we find no inequity in awarding both parties prejudgment interest at the same statutory rate. Accordingly, we will affirm the District Court's decision to award Purolite prejudgment interest at a rate of 6% per annum.

D.     *Motion for a New Trial*[8]

ECEM challenges the District Court's order "denying ECEM's post-trial motion seeking a new trial on the issue of [Purolite's] counterclaim due to the [District] Court's failure to admit evidence of business communications between the parties." (J.A. at 1.) However, because of our holding that the District Court did not err in granting Purolite's motion in limine to exclude evidence of compromise negotiations, we also conclude that the District Court did not err in denying ECEM's motion for a new trial.

## III.     Conclusion

For the foregoing reasons, we affirm the District Court.

---

[8] "The standard of review on a motion for a new trial is abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case the appellate court's review is plenary." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009).