685 A.2d 141

SOMERSET COMMUNITY HOSPITAL, a Pennsylvania
Not–For–Profit Corporation, Appellant,

v.

ALLAN B. MITCHELL & ASSOCIATES, INC., a Pennsylvania
Corporation: and Deeter Ritchey Sippel, Architects/Planners,
a Professional Corporation, Appellees.

DEETER RITCHEY SIPPEL, ARCHITECTS/PLANNERS,
a Professional Corporation, Appellees,

v.

SOMERSET COMMUNITY HOSPITAL, a
Non–Profit Corporation, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 10, 1996.

Filed Oct. 31, 1996.

190

Daniel W. Rullo, Somerset, for Somerset Community Hospital.

Robert W. Doty, Pittsburgh, for Deeter Ritchey Sippel.

Before CIRILLO, President Judge Emeritus, and TAMILIA and HESTER, JJ.

CIRILLO, President Judge Emeritus.

Somerset Community Hospital appeals from the judgment entered in the Court of Common Pleas of Somerset County denying its post-trial motions.[1] We affirm.

This appeal involves two consolidated cases filed by Appellant–Somerset Community Hospital ("Hospital") and Appellee–Deeter Ritchey Sippel Architects/Planners ("DRS"). The first action, filed by DRS against the Hospital, alleges breach of an oral and written contract, promissory estoppel and quantum meruit.[2] The second action, filed by the Hospital against DRS, alleges breach of the same written contract.

The facts underlying the two cases are as follows. On October 1, 1984, DRS and the Hospital signed a contract ("October agreement") obligating DRS to perform architectural and planning services for renovations and additions to be made to the Hospital's medical facilities. The October agreement set forth a total construction cost of $5,000,000.00, with a fixed fee to be paid in increments of $375,000.00 to DRS. Shortly after entering into the agreement, the Hospital began directing and approving changes in the project which substan-

1. Generally, orders dismissing post-trial motions following a jury trial are interlocutory and non-appealable until judgment has been entered on the docket. *Johnston the Florist v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511 (1995) (en banc); *see also Murray v. Abcon, Inc.*, 291 Pa.Super. 428, 435 A.2d 1301 (1981). In the present case, on January 11, 1996, the prothonotary, at the direction of the Hospital, reduced the order denying the Hospital's post trial motions to judgment. *See* Pa.R.A.P. 301 (no order shall be appealable until it has been entered upon the appropriate docket in the lower court). Accordingly, this order is properly before us on appeal.

2. The trial court granted the Hospital a non-suit on the quantum meruit and promissory estoppel claims.

tially changed and expanded the initial plans and resulted in a total construction cost increase of over $2,000,000.00.

On January 12, 1985, the parties allegedly made an oral modification to the October agreement regarding the scope of services to be provided by DRS and the compensation to be received. At trial, DRS alleged that additional oral modifications were made to the October agreement, and presented evidence which discussed the additional work to be done by DRS, the Hospital's intentions to approve this work, negotiations for revised fees for DRS' services, and certain amounts already due to DRS. Relying on these discussions, DRS continued to perform architectural, planning, and design services which were requested by the Hospital. On July 15, 1986, the Hospital terminated its contract with DRS for failure to stay within the budgetary constraints of the October agreement.

On August 11, 1986, DRS submitted to the Hospital a written invoice which totaled $157,363.15 and represented the cost for services which it rendered from May 20, 1985 through July 15, 1986. When the Hospital refused to pay DRS, the first action involved in this consolidated appeal was filed by DRS.

After trial, the jury returned a $46,000.00 verdict in favor of DRS. The court subsequently molded the verdict to reflect "pre-judgment" interest accrued from June 12, 1986 until March 3, 1995,[3] at a rate of 6% per year—a total verdict of $70.086.16. After filing post-trial motions which were denied, the Hospital now appeals and raises the following issues for our review:

(1) Did the trial court err in failing to direct the verdict or grant judgment notwithstanding the verdict in favor of Hospital on DRS' claim, especially when the evidence established that there was no authorization of the parties to modify the written contract of October 1, 1984; that there

3. The date of June 12, 1986 represents the day that the Hospital completed the "Design Development Phase" of the parties' October agreement. March 3, 1995 is the date on which the jury verdict, in DRS' favor, was rendered.

was no meeting of the minds by authorized representatives of the parties as to the establishment of an essential term, such as price; and that DRS' own evidence refuted the fact that there was an oral modification of architect fees in the amount of $450,000.00?

(2) Did the trial court err in allowing DRS to amend its pleading and theory after the close of its case to allege an oral modification of a written contract on unspecified dates, at unspecified times, at unspecified places, with unspecified individuals, especially when the standard of proof required clear, precise and convincing evidence?

(3) Did the trial court err in not granting a new trial where DRS was granted an amendment of its theory after the close of its case in chief and despite its pretrial projection utilized four or five days in the presentation of its case requiring the Hospital to shorten its trial presentation by two days to stay within the date certain time allocated for the case? [4]

(4) Where the parties contractually agreed to permit Hospital to withhold disputed payments until a "final court determination," may interest be awarded before there is an obligation to make payment?

(5) Where DRS failed to mitigate damages by not seeking a final court determination for over eight years, will prejudgment interest be awarded?

(6) Did the trial court err in not granting the directed verdict of the Hospital on its claim for damages or granting a new trial where DRS had failed to perform its obligations under the October 1, 1984 agreement by underestimating the construction costs, failing to stay within the budget restraints, preparing drawings that were inaccurate thereby requiring the Hospital to redesign the project and incurring a duplication of expenses for the project?

■ Our standard of review of an order denying judgment notwithstanding the verdict is whether there was sufficient

---

**4.** Issues two and three have been consolidated in our appellate review, as both issues relate to the law of amendment of pleadings and theory of a case.

competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). The standard of review for an appellate court is the same as that for a trial court: j.n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds–Cadillac–GMC,* 413 Pa.Super. 308, 605 A.2d 373 (1992). The standard of review of a trial court's grant or denial of a motion for a new trial is, generally, whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 428–29, 521 A.2d 413, 422 (1987). To reverse the trial court, this court must consider all the evidence in the light most favorable to the appellee and conclude that the verdict would be changed if another trial were granted. *Robertson v. Atlantic Richfield Petroleum Prod. Co.,* 371 Pa.Super. 49, 537 A.2d 814 (1987).

■ The Hospital first claims that the trial court erred by not directing a verdict or granting judgment in its favor. Specifically, the Hospital alleges that there was no evidence to establish that the parties modified the October agreement. The record belies this assertion.

■ A written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing. *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 244 A.2d 10 (1968). An agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing. *Accu–Weather v. Prospect Communications,* 435 Pa.Super. 93, 644 A.2d 1251 (1994). An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence. *Pellegrene v. Luther,* 403 Pa. 212, 169 A.2d 298 (1961).

Viewing the evidence in the light most favorable to DRS, we find that the court correctly determined that the conduct of the parties and their representatives orally modified the October agreement, effectively waiving the clause prohibiting non-written modification of the parties' written contract.[5] Presently, the record evidences a multitude of minutes from meetings wherein representatives of both parties extensively discussed that DRS would continue to perform additional services, and that DRS would be compensated for such additional work. *See Universal Builders, supra* (where an owner requests that a builder do additional work, promises to pay for such extra work, and watches it performed knowing that it is not authorized in writing, he cannot refuse to pay on the ground that there was no written amendment to contract stating that the additional work was authorized under the parties' contract). In a letter admitted at trial, the parties proposed that the architect's fee would be increasingly modified. The meeting minutes also reflect extensive plans for the increase in the scope of the construction, for the use of additional architect plans, and for DRS' compensation for such extra work. Accordingly, based upon the clear and convincing evidence of oral modification to the parties' contract, the Hospital was not entitled to a judgment or verdict in its favor. *See Wenrick, supra; see also East Texas Motor Freight, Diamond v. Lloyd,* 335 Pa.Super. 464, 484 A.2d 797 (1984) (it is within the province of the jury to define terms of parol modification of contract and, unless party's version of modification is not supported, the court should not declare that modification did not exist).

■ The Hospital next contends that the court erred by allowing DRS to amend its case theory after it rested and the Hospital moved for non-suit. Specifically, the trial court allowed DRS to amend Count II of its complaint by adding

5. Article 12, section 1 of the parties' October agreement states:

 This agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This agreement may be amended only by written instrument signed by both Owner and Architect.

conduct and promises made between the parties on certain dates in order to prove that certain modifications of price terms from the October agreement had taken place.

 A party may, at any time, with consent of an opposing party or by leave of court, amend his or her pleading. *See Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); Pa.R.C.P. 1033. A trial court has broad discretion in ruling on a party's motion to amend the pleadings. *Id.* An amendment will not be allowed, however, when it is against a positive rule of law, where it states a new cause of action after the statute of limitations has run, or when it will surprise or prejudice the opposing party. *Horowitz v. Universal Underwriters*, 397 Pa.Super. 473, 580 A.2d 395 (1990).

In its initial complaint, DRS alleged the following counts: quantum meruit, breach of a written contract, and breach of an oral contract. The pleading also recounted that the parties had entered into various negotiations and held a number of meetings where the parties agreed to perform additional architectural and planning services in order to expand the plans under the original October agreement. When the Hospital failed to remit payment for the reasonable value of the expanded services performed, the instant complaint was filed by DRS.

We find that the Hospital was well aware that DRS originally claimed both breach of contract and oral modification. *Cf. John Goffredo & Sons, Inc. v. S.M.G. Corp.*, 300 Pa.Super. 112, 446 A.2d 255 (1982) (where contractor brought suit in assumpsit alleging only a breach of a written contract against owner, contractor could not amend pleadings, post-trial, to allege that parties had subsequently orally modified the contract and waived a provision of agreement; amendment introduced a completely new theory and cause of action). Additionally, the original complaint filed by DRS contained the same parties and evidence which were used throughout trial to prove DRS' case. The amendments related to certain dates and conduct by the parties which intended to supplement

DRS' proof that an oral modification to the parties' original written contract existed; they did not alter the measure of damages alleged by DRS, the defenses intended to be utilized at trial, or the measure of proof. We also are unable to find that the amendments alleged any new causes of action against the Hospital. *See Ecksel, supra* (where new amendment was based on same operative facts as original action and opposing party had received notice of party's desire to increase claim for damages, court properly granted leave to amend pleading).

Finally, the Hospital alleges that it was prejudiced by the amendments. Specifically, the Hospital claims that "[c]ross-examination **may** have been conducted entirely differently as to the principal witnesses and no significant opportunity was available to investigate and address these new allegations...." This claim is lacking in definitiveness and unsupported in Appellant's brief; we, therefore, cannot uphold a finding of prejudice. *See Horowitz, supra* (where party's allegation that it would be prejudiced by amendment of opposing party's pleading was no more that mere conjecture and speculation, amendment was proper); *see also Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich*, 344 Pa.Super. 367, 496 A.2d 840 (1985) (prejudice suffered by party opposing amendments must prove that it suffered more than a detriment).

The Hospital also asserts that it was greatly prejudiced because it was not given adequate time in which to present its case. We find this claim waived.[6] The Hospital never objected, at any point, to a lack of time in which it had to present its case. *See* Pa.R.C.P. 227 (if no objection is made, error which should have been corrected during trial by timely objection may not constitute a ground for post-trial relief; grounds not specified are deemed waived). Based upon the

---

6. Even if we were to review this argument, we would find it meritless. The record reveals that the court asked, on repeated occasions, whether the jury could convene for extra trial sessions. In fact, the jury was finally excused in mid-afternoon on Saturday, March 4th. The court and DRS perceptively note that appellant had several hours of available court time and the option to continue to try its case instead of resting in the early afternoon on Saturday.

trial court's broad discretion in matters of amendment and the facts of the case, we do not find that the trial court committed any abuse of discretion by allowing DRS to amend either its pleading or theory of the case. *Feingold v. Hill,* 360 Pa.Super. 539, 521 A.2d 33 (1987).

The Hospital next claims that a provision of the parties' October agreement should have precluded the court from molding the verdict to include the award of prejudgment interest. Specifically, the Hospital takes issue with the following contractual provision of the parties' October agreement:

**6.2 PAYMENTS WITHHELD.**

6.2.1 *Owner may withhold* all or any portions of *payments* otherwise claimed by the Architect [DRS] pursuant to this agreement which are in dispute between the parties *until a final court determination* is made of the Owner's [Hospital] liability to Architect or Architect's liability to Owner which can be set off or deducted from any amount which may otherwise be due from Owner to Architect or until such dispute is mutually resolved by agreement between Owner and Architect.

It is well established that in contract cases, prejudgment interest is awardable as of right. *Thomas H. Ross Inc. v. Seigfreid,* 405 Pa.Super. 558, 592 A.2d 1353 (1991). Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court. *Daset Min. Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 473 A.2d 584 (1984). "In claims that arise out of a contractual right, interest has been allowed at the legal rate from the date that payment was *wrongfully* withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation." *Id.* at 35, 473 A.2d at 595 (emphasis added). The basic premise underlying the award of prejudgment interest to a party centers upon the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party. *Thomas H. Ross, supra.*

Our supreme court, in *Penneys v. Pennsylvania Railroad Co.*, 408 Pa. 276, 183 A.2d 544 (1962), adopted section 337(a) of the Restatement of the Law of Contracts, to determine when interest is recoverable as contract damages. Section 354 of the Restatement (Second) of Contracts (formally § 337(a) of the Restatement of the Law of Contracts) states:

> (1) If the breach [of a contract] consists of a failure to pay a definite sum of money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

**Restatement (Second) of Contracts § 354 (1979).**

The comments to section 354 allow for exceptions to the general rule of interest payable as damages to a party injured by a contract breach. Specifically, one comment mentions that section 354 does not deal with the injured party's right to interest under the terms of a contract because "[i]f the parties have agreed on *the payment of interest,* it is payable not as damages but pursuant to a contract duty that is enforceable." **Restatement (Second) of Contracts** § 354 cmt. a. (1979) (emphasis added). Finally, comment b. to section 354 states that "if there is a period of time before performance is due, such as a definite or indefinite period of credit, interest does not begin to run until the period is over." *Id.* at cmt. b. (1979).

In order to resolve whether the court properly awarded prejudgment interest to DRS, we must answer two pivotal questions: (1) whether the parties' contractual provision, which allows the Hospital to withhold payment, constitutes a "wrongful withh[olding]" of the sums owed for DRS' performance under the October agreement, *Daset Min. Corp., supra,* and (2) whether section 6.2.1 of the parties' October agreement suspends the Hospital's duty to pay any breach of

contract damages until the trial court finally determines which party was liable for breach of the contract.

 The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651 (1993). In construing a contract, each and every part of it must be taken into account and, if possible, given effect. *Wrenfield Homeowners Ass'n, Inc. v. DeYoung*, 410 Pa.Super. 621, 600 A.2d 960 (1991). One part of a contract should not be construed so as to annul another provision of the same contract. *Second Federal Sav. and Loan Ass'n v. Brennan*, 409 Pa.Super. 581, 598 A.2d 997 (1991).

> Article 9, section 9.1 of the parties' agreement states that: If ... termination is because of a breach of or non-performance by Architect, Architect shall receive no compensation other than compensation already paid and **shall be subject to liability for damages for breach or nonperformance.** If the termination [of this contract] is not based upon a breach of the agreement or nonperformance by Architect, then **Architect shall be entitled to full compensation for all phases of the Project which have been completed at the time written notice of termination is received.**

Although the Hospital terminated its agreement due to an alleged breach by DRS for "not performing the services identified in accordance with the terms of the contract," the court ultimately determined that because the Hospital had orally modified the October agreement, DRS was entitled to a judgment in its favor. As section 9.1 mandates, if DRS breached its contract with the Hospital, the Hospital would be entitled to breach of contract damages, which includes pre-judgment interest as a right under basic principles of contract law. *Thomas H. Ross, supra.* Similarly, we find that the converse should be true for DRS as the injured party. Further, we find no provision in the parties' October agreement stating that the parties had agreed on the payment or nonpayment of interest. *Cf. Daset Min. Corp, supra* (in absence of contractual provision, prejudgment interest in amount greater

than legal rate of 6% could not be awarded). Additionally, we do not perceive the ability to withhold payment of compensation as "a definite or indefinite period of credit" as suggested by comment b. to § 354 of the Restatement's (Second) of Contracts.

When section 9.1 is read in light of the entire contract, and specifically, section 6.2.1, we find that the court properly awarded prejudgment interest to DRS. In order to best effectuate the reasonable intent of the parties, and in light of the equitable nature of awarding prejudgment interest, the court properly molded the verdict to reflect interest from the date that DRS completed the design phase of its work until the entry of judgment. *See Fernandez v. Levin*, 519 Pa. 375, 548 A.2d 1191 (1988). DRS was unjustly deprived by the Hospital's wrongful withholding of money due for its completion of work under the parties' October agreement. Because the amount owed to DRS for its performance was fully liquidated, certain, and readily ascertainable, *Daset Min. Corp., supra*, DRS was legally entitled to prejudgment as a matter of right. *Thomas H. Ross, supra*.

 In its remaining issue, issue five, the Hospital alleges an alternative argument supporting its claim that the trial court erred in awarding DRS prejudgment interest. Specifically, the Hospital claims that DRS breached its duty to mitigate damages by causing a substantial delay in moving this case forward. If DRS had not waited almost eight years for the court to enter a final judgment, the Hospital asserts that the harm which DRS suffered from the alleged contract breach could have been prevented.

 It is well established that a party who suffers a loss due to the breach of a contract has the duty to make reasonable efforts to mitigate his losses. *Bafile v. Borough of Muncy*, 527 Pa. 25, 588 A.2d 462 (1991) (citations omitted). The burden to prove this duty to mitigate is placed on the party who actually breaches the contract; the breaching party must show how further loss could have been avoided through the reasonable efforts of the injured party. *Pontiere v. James*

*Dinert, Inc.,* 426 Pa.Super. 576, 627 A.2d 1204 (1993). An injured party, however, is not obligated to mitigate damages when both it and the liable party have an equal opportunity to reduce damages. *Loyal Christian Ben. Ass'n v. Bender,* 342 Pa.Super. 614, 493 A.2d 760 (1985).

The Hospital relies on *Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 183 A.2d 544 (1962), to support its mitigation argument. In *Penneys,* our supreme court held that because the trial court had been presented with no evidence indicating whether plaintiff or defendant had caused a delay of almost seven years from the alleged contract loss until the entry of a judgment, prejudgment interest was properly awarded to the plaintiff. The Hospital claims that the *Penneys* holding implicitly finds that "if there had been evidence indicating that the plaintiff had caused the delay, the plaintiff would have been precluded from recovering prejudgment interest."

The *Penneys* court stated:

> Although it may appear unreasonable to require appellant to pay interest for a long period when it had no control over the litigation, **it appears equally unreasonable to deprive appellees of the fruit of the use of their money during a period when they also had no control over the course of the litigation.**

*Id.* at 280, 183 A.2d at 546 (emphasis added). The Hospital claims that the only activity on the case by DRS for nearly six years was the taking of one deposition. The docket reflects that between December 10, 1990 and November 15, 1993 there was no recorded activity on the case. On November 15, 1993, the court ordered a hearing on the inactive status of the case. On January 3, 1994, the docket lists the filing of a pretrial statement. The record then reflects that upon the motion of the Hospital, the cases were consolidated on January 23, 1995.

Although the docket may appear to have been inactive for almost three years, the record contains a November 28, 1990, court order directing the Appellant–Hospital to comply with DRS' discovery requests. In addition, in December of 1993, the court ordered that an inactive status hearing be continued

until a later date because the parties had presented "good·cause." There is no testimony from this status hearing in the record. Accordingly, we can discern neither the reasons for delay, nor which party caused the lengthy delay in finalizing this action. *Penneys, supra.*

Unrecognized by appellant is the fact that as an original plaintiff in this consolidated matter, it had just as much of a duty to diligently prosecute this case as DRS. Courts have the discretion to· dismiss a case when a plaintiff has failed to diligently prosecute an action, and, as a result, caused a defendant prejudice, unfairness and anxiety. *Mudd v. Nosker Lumber, Inc.,* 443 Pa.Super. 483, 662 A.2d 660 (1995). *See James Bros. Co. v. Union Banking and Trust Co. of DuBois,* 432 Pa. 129, 247 A.2d 587 (1968) (a court may enter a judgment *non pros* where (1) a party has shown a lack of due diligence by failing to proceed with reasonably promptitude; (2) there is no compelling reason for the delay; and, (3) the delay has caused prejudice to the adverse party); *see also Penn Piping, Inc. v. Ins. Co. of North America,* 529 Pa. 350, 356, 603 A.2d 1006, 1007 (1992). Under the present facts of this case we cannot find that DRS had a duty to mitigate damages when the Hospital was equally responsible for actively proceeding in prosecuting this matter. *Loyal Christian, supra.*[7] The trial court neither abused its discretion nor committed an error of law. *Stevenson, supra.*

Finally, the Hospital contends that the court erred in not directing a verdict in its favor or granting it a new trial on

---

7. We distinguish the present case from the situation where there has been a delay from the close of trial until the date final judgment is entered. *See Alberici v. Safeguard Mut. Ins. Co.,* 444 Pa.Super. 351, 664 A.2d 110 (1995); *Thomas H. Ross, Inc. v. Seigfreid,* 405 Pa.Super. 558, 592 A.2d 1353 (1991). In *Thomas H. Ross, supra,* the cross-appellant claimed that the trial court improperly suspended his interest payments in a breach of contract action, where the trial court had caused a delay of over two years in entering final judgment after the close of trial. Presently, the appellant does not argue that the trial court was the cause of the delay in entering final judgment. Rather, the Hospital asserts that the appellee caused the delay up to and including the entry of judgment. Although these arguments differ, each compels the same result—affirming the award of prejudgment interest.

its claim for damages. Having already determined that the court properly found that the Hospital breached an oral modification to the parties' October agreement, the court did not abuse its discretion in refusing to grant a new trial on the issue of damages. In light of the entire contract, especially article 9, section 9.1, *supra*, DRS was entitled to damages for breach under the contract.

Judgment affirmed.