J-A24043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PETER KOLLIAS AND NICHOLAS CHRISTIE TRADING AS K & C REAL ESTATE HOLDING COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHRISKOLL, INC. | |
| Appellant | No. 3327 EDA 2015 |

Appeal from the Order Entered July 21, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s): No. 12-9695

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                **FILED NOVEMBER 23, 2016**

Appellant Chriskoll, Inc. appeals from the judgment entered against it and in favor of K & C Real Estate Holding Company in the amount of $547,818.47 for Chriskoll's breach of a lease.  We affirm in part, reverse in part, and remand.

The facts of this case are complex, but can be made more comprehensible with this general overview:  Peter Kollias and Nicholas Christie owned two businesses.  One of them, K & C, owned real estate.  The other, Chriskoll, owned a Burger King franchise that rented the K & C property.  During the time they owned both businesses (and for some time thereafter), Kollias and Christie sometimes mingled their personal and business financial affairs.  Eventually, Kollias and Christie sold Chriskoll to

three new owners, Christopher Nawn, George Stasen, and James Rizzo. Under those new owners, Chriskoll failed to make rent payments to K & C, leading to this action by K & C for breach of the lease. One of Chriskoll's main defenses was that it was entitled to set off against its rent payments amounts it paid to satisfy debts of Kollias, Christie, and K & C. In this appeal, Chriskoll claims that the trial court erred in resolving this dispute in favor of K & C.

K & C is a Pennsylvania General Partnership, in which Kollias and Christie are the general partners. It owned the premises at 475 69th Street in Upper Darby Township ("the premises"), and, on August 17, 1995, it entered into a lease agreement ("the lease") to rent the premises to Chriskoll's predecessor, Upper Darby Fast Foods, Inc. Kollias and Christie were the sole shareholders of Upper Darby Fast Foods and had formed that company to operate a Burger King franchise at the premises. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 1-2, 5-7.

Between August 1995 and June 2000, Kollias and Christie formed six more business entities, each of which operated a Burger King franchise at a separate location. At the request of the franchisor, Burger King Corporation, Kollias and Christie merged the seven business entities into a single entity, Chriskoll, on June 27, 2000. Kollias and Christie were each fifty percent shareholders in Chriskoll. As a result of the merger, Chriskoll became the successor in interest to all of the rights and obligations of Upper Darby Fast

Foods, as tenant under the K & C lease. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 8-13.

On July 18, 2000, Christie sold all of his shares in Chriskoll to Kollias and Chriskoll's General Manger, James Rizzo. As a result of the sale, Kollias held 90% and Rizzo held 10% of the shares of Chriskoll. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 14-16.

Kollias and Christie often used their personal finances to fund the operations of Chriskoll, and both continued to do so even after Christie sold his shares in Chriskoll. The trial court found:

> Throughout the period 1979 to the time of Mr. Christie's sale of his shares, Mr. Kollias and Mr. Christie often used personal credit facilities available to each of them, such as credit cards and personal loans, to fund the operation of Chriskoll, Inc., in times of slow business operations. The shareholders also sought and found traditional credit through banking relationships maintained for the operation of Chriskoll, Inc., and the other business entities formed to operate individual Burger King franchises prior to the June 2000 Plan and Agreement of Merger.
>
> As a result, even after the sale of his shares in Chriskoll, Inc., Mr. Christie continued to use his personal finances along with Mr. Kollias to finance operations of Chriskoll, Inc.

Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 18-19.

At some point during the period 2004 to 2007, Chriskoll retained Christopher Nawn (a CPA) and his public accounting firm, to serve as Chriskoll's accountant. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶ 20. In 2006, Nawn arranged for Chriskoll, K & C, Christie, and Kollias to obtain a $1.25 million loan from Eagle National Bank in order to (1) pay off

$450,000 of existing loans from PNC bank (including K & C's $222,290 mortgage on the premises), a loan from Citizen's Bank, and amounts owed to Burger King Corporation[1]; (2) pay off sales taxes; and (3) provide funds for capital improvements. **See** Exhibit D-5, Eagle National Bank Letter, 6/20/06; N.T. 5/18/15, at 147-48; 5/20/15, at 52. After the payoff of the $222,290 K & C mortgage, Chriskoll made all payments on the loan to Eagle National Bank, and it continued to do so after the loan was later refinanced by Irwin Franchise Capital. **See** N.T. 5/18/15, at 186-87; 5/20/15, 53, 54, 159, 161, 165.

On November 30, 2007, Nawn and his business associate, George Stasen, purchased all of Kollias' shares in Chriskoll. As a result of this purchase, Nawn owned 45% of the shares, Stasen owned 45%, and Rizzo owned 10%. After gaining control, Nawn and Stasen operated Chriskoll and its Burger King franchises. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶ 21-25.

On January 1, 2009, Chriskoll and K & C entered into an amended lease agreement ("the amended lease"). The amended lease obligated Chriskoll to pay: (1) a base rent of $5,000 per month; (2) a percentage rent

---

[1] Apart from the K & C mortgage, Chriskoll did not allege that the other PNC loans were K & C obligations. **See** Defendant's Answer with New Matter and Counterclaim, ¶¶ 52 [first], 77(D). Chriskoll claimed that the Citizen's Bank debt was Christie's personal obligation, but Christie and Kollias contended that this debt was a Chriskoll obligation. **See id.** at ¶ 52 [second]; N.T. 5/21/15, at 27; 5/20/15, at 19; 5/22/15, at 57.

on certain gross receipts from the restaurant; and (3) township, county, and school district taxes assessed to the premises. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 26-27.

Chriskoll then failed to pay the rent due under the amended lease. Accordingly, on September 24, 2012, K & C notified Chriskoll that it was exercising its right to terminate the amended lease, effective October 15, 2012, due to Chriskoll's failure to pay rent. As of the date of the trial in this matter (May 18, 2015), Chriskoll remained in default and maintained possession of the premises. Trial Court Opinion, filed 10/2/15, Findings of Fact, ¶¶ 25, 28-30; Exhibit P-21.

On November 30, 2012, K & C filed the instant action against Chriskoll, seeking Chriskoll's eviction from the premises and payment of delinquent rent. Chriskoll filed counterclaims against K & C, Kollias, and Christie. With respect to K & C, Chriskoll sought: (1) an accounting of amounts due under the amended lease; (2) an order confirming the agreement of K & C, Christie, Kollias, and Chriskoll that the K & C mortgage and the "Christie Citizen's Bank debt" would be amortized *in pari passu* with the Chriskoll borrowings from Eagle National Bank and Irwin Franchise Capital, and that the *in pari passu* payments would be applied towards rent due under the amended lease; (3) a judgment for structural repairs Chriskoll made to the premises, for which K & C did not reimburse Chriskoll; and (4) a judgment for the amount by which payments made by Chriskoll for the K & C

mortgage, the "Christie Citizen's Bank Debt," and unreimbursed structural repairs exceeded the amount of rent due to K & C under the amended lease. Defendant's Answer with New Matter and Counterclaim, 1/14/13, ¶ 77.[2]

Following a bench trial in May of 2015, the trial court filed its decision on October 2, 2015. The trial court found in favor of K & C on its claims against Chriskoll, and ordered Chriskoll to vacate the premises and pay damages of $503,271.00, together with pre-judgment and post-judgment interest and the costs of suit incurred by K & C, Kollias, and Christie. Trial Court Opinion, filed 10/2/15, Decision, ¶ 1. The damages consisted of: fixed rent ($177,500); percentage rent ($24,850); and delinquent taxes ($300,921). Trial Court Opinion, filed 10/2/15, Conclusions of Law, ¶ 24. The trial court found that Chriskoll had not proven any of its counterclaims, and it entered judgment in favor of K & C on the counterclaims. *Id.*, Decision, ¶¶ 4-6.

On October 9, 2015, Chriskoll filed a motion for reconsideration,[3] seeking: (1) a reduction of the amount of damages awarded with respect to

_____

[2] Chriskoll also brought counterclaims against Christie and Kollias in their individual capacities, but those counterclaims are not relevant to the preserved issues in this appeal.

[3] Although entitled a motion for reconsideration, this motion was effectively a motion for post-trial relief, which preserved all issues raised in it. *See Mackall v. Fleegle*, 801 A.2d 577, 580 n.1 (Pa. Super. 2002) ("Despite being improperly styled as a motion to reconsider, upon review, it appears that Appellant's motion was actually a motion for post-trial relief, thus
*(Footnote Continued Next Page)*

delinquent taxes; and (2) a reduction in the amount of damages awarded for fixed rent, and a further reduction of the remaining damages based on K & C's alleged debt to Chriskoll (K & C's share of the Irwin loan). On November 17, 2015, the trial court denied Chriskoll's motion for reconsideration. On July 21, 2016, judgment was entered on the verdict. This appeal followed.[4]

Appellant raises the following eleven issues, as stated in its brief:

A. WHETHER THE LEARNED TRIAL JUDGE ERRED IN FINDING THAT CHRISKOLL WAS RESPONSIBLE TO PAY VARIOUS MUNICIPAL ENTITIES $300,920.82 UNDER THE TERMS OF THE AMENDED LEASE, WHEN THE PUBLIC RECORDS INDICATE THAT AT THE TIME OF TRIAL $69,555.80 REMAINED DUE AND OWING.

_(Footnote Continued)_ ───────────

preserving the issues raised therein"); **Gemini Equipment Co. v. Pennsy Supply, Inc.**, 595 A.2d 1211, 1214 (Pa. Super. 1991) ("petition for reconsideration" intended to perform function of post-trial motion preserved issues); **Oak Tree Condo. Ass'n v. Greene**, 133 A.3d 113, 117 (Pa. Cmwlth. Ct. 2016) ("A timely motion styled as one for reconsideration where post-trial motions are proper can be treated as a post-trial motion where the request for relief comports with the requirements delineated in Rule 227.1(a)(4) — to affirm, modify or change a decision . . . ."). K & C concedes that Chriskoll's motion should be treated as a motion for post-trial relief under Rule 227.1 of the Rules of Civil Procedure. Appellee's Brief at 8.

[4] Chriskoll filed its notice of appeal on October 28, 2015, after the trial court rendered its decision but before judgment had been entered. This notice will be treated as if it were filed on the day judgment was entered, July 21, 2016. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); **American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.**, 948 A.2d 834, 842 n.1 (Pa. Super. 2008), **aff'd**, 2 A.3d 526 (Pa. 2010). We have corrected the caption to state that the appeal is from the judgment entered on July 21, 2016, rather than the trial court's October 2, 2015 decision.

B. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN FINDING THAT THE LOAN DOCUMENTS AND 2007 FEDERAL TAX RETURNS EXECUTED BY PLAINTIFF, K & C, AND DEFENDANT, CHRISKOLL, AMENDED THE LEASE AND AMENDED LEASE.

C. WHETHER THE LEARNED TRIAL JUDGE ERRED IN DENYING THE ADMISSION OF EXHIBIT D-34, PAGE 31-36, BY FINDING SAID EXHIBIT WAS SETTLEMENT NOTES WHEN SUCH DOCUMENTS WERE PRODUCED IN DISCOVERY AND TESTIFIED TO AT CHRISTIE'S DEPOSITION [AND] SUCH EVIDENCE ESTABLISHED BY ADMISSION OF CHRISTIE THAT THERE WAS A VERBAL AGREEMENT BETWEEN K&C, CHRISKOLL, CHRISTIE AND KOLLIAS REGARDING THE PAYMENT OF THIRD-PARTY EXPENSES AND OFFSETTING RENT DUE K&C.

D. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN FINDING THAT K&C, KOLLIAS, CHRISTIE AND CHRISKOLL'S COURSE OF CONDUCT BETWEEN 2006 AND PRESENT ESTABLISHED A NEW CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES REGARDING THE PAYMENT OF CHRISTIE'S AND KOLLIAS'S EXPENSES TO THIRD-PARTIES AND OFFSETTING RENT DUE UNDER THE AMENDED LEASE, AND AS A RESULT OF THE NEW CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES, CHRISKOLL WAS NOT IN DEFAULT OF [*SIC*] AS OF THE SEPTEMBER 24, 2012 LETTER FROM K&C TERMINATING THE AMENDED LEASE.

E. WHETHER THE LEARNED TRIAL JUDGE ERRED IN FAILING TO CREDIT CHRISKOLL FOR PAYMENTS TO K & C'S MORTGAGE COMPANY AS K & C ADMITTED AND ACKNOWLEDGED THAT CHRISKOLL WAS ENTITLED TO CREDIT FOR THESE PAYMENTS FROM OCTOBER, 2012 THROUGH PRESENT.

F. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN FINDING THAT K & C'S SHARE OF THE EAGLE NATIONAL BANK AND IRWIN LOANS PLUS RENT PAYMENTS MADE DIRECTLY TO CHRISTIE AND KOLLIAS, AS OF OCTOBER 15, 2012 EXCEEDED ALL AMOUNTS DUE UNDER THE AMENDED LEASE AND AS ILLUSTRATED BY EXHIBIT D-1 PAGE 2.

G. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN FINDING THAT CHRISTIE'S $169,589.38 LOAN FROM CITIZENS BANK WHICH WAS REFINANCED IN 2006, WAS A

CHRISKOLL OBLIGATION, PARTICULARLY SINCE CHRISTIE ADMITTED THAT KOLLIAS WAS EVEN AWARE OF THE LOAN BEING TAKEN AND IN CONSIDERATION OF THE FACT THAT THE FUNDS WENT TO KOLLIAS PERSONALLY, NOT CHRISKOLL, AND THAT CHRISTIE NEVER MENTIONED TO CITIZENS BANK THAT IT WAS A CHRISKOLL LOAN.

H. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN NOT FINDING THAT CHRISKOLL'S OPEN INDEBTEDNESS/SHAREHOLDER LOAN ACCOUNTS MAINTAINED FOR CHRISTIE AND KOLLIAS WERE VALID DEBTS DUE CHRISKOLL, $36,573 (OR MORE) FROM CHRISTIE $303,715 FROM KOLLIAS, AND ENTITLED TO BE OFFSET AGAINST AMOUNTS DUE K&C PURSUANT TO THE AMENDED LEASE.

I. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN THAT BY EXCLUDING EVIDENCE THAT CHRISTIE AND CHRISKOLL AGREED TO A 40%/60% SPLIT ON CHRISTIE'S FAMILY HEALTH INSURANCE COST IT RESULTED IN CHRISKOLL NOT BEING ABLE TO PROVE THAT IT IS ENTITLED TO BE REIMBURSED $53,324, BY CHRISTIE AND SUCH AMOUNT SHOULD OFFSET AMOUNTS DUE K&C FROM CHRISKOLL.

J. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN HOLDING THAT CHRISKOLL'S PAYMENT OF $81,318 FOR KOLLIAS' BANK OF AMERICA CREDIT CARD AND $41,000 IN JUDGMENTS DID NOT OFFSET RENT PAYMENTS DUE OR ALTERNATIVELY GET ADDED TO KOLLIAS' SHAREHOLDER LOAN/ OPEN INDEBTEDNESS ACCOUNT ON CHRISKOLL'S BOOKS AND RECORDS.

K. WHETHER THE LEARNED TRIAL JUDGE ERRED AS A MATTER OF LAW IN HOLDING THAT CHRISKOLL'S PAYMENT OF $63,056 FOR CHRISTIE'S BANK OF AMERICA CREDIT CARD AND $15,000 JUDGMENT DID NOT OFFSET RENT PAYMENTS DUE OR ALTERNATIVELY GET ADDED TO CHRISTIE'S SHAREHOLDER LOAN/OPEN INDEBTEDNESS ACCOUNT ON CHRISKOLL'S BOOKS AND RECORDS.

Appellant's Brief at 6-8 (suggested answers omitted).

**Waiver**

K & C argues that seven of the issues presented by Chriskoll — Items C, D, G, H, I, J, and K — are waived because they were not included in Chriskoll's post-trial motion. We agree.[5]

Under Rule 227.1 of the Rules of Civil Procedure, "a party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal." ***Chalkey v. Roush***, 805 A.2d 491, 496 (Pa. 2002) (emphasis in original). "If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." ***Lane Enterprises, Inc. v. L.B. Foster Co.***, 710 A.2d 54 (Pa. 1998).

Here, Chriskoll filed a timely post-trial motion on October 9, 2015. In that motion, Chriskoll argued that the trial court erred in two respects: (1) calculating the amount of taxes due; and (2) failing to find that Chriskoll was entitled to a rent offset based on payments Chriskoll made on behalf of K & C for a mortgage. Chriskoll's post-trial motion did not address the other issues Chriskoll now attempts to litigate before this Court. Therefore, we hold that the issues listed under Items C, D, G, H, I, J, and K are waived. ***See Lane***, 710 A.2d at 54.[6]

_____

[5] Chriskoll did not, in a reply brief or otherwise, respond to K & C's waiver argument. The trial court did not address the issue of waiver in its February 24, 2016 Appellate Rule 1925(a) opinion.

[6] Chriskoll's inclusion of claims in its Appellate Rule 1925(b) statement of matters complained of on appeal does not excuse its failure to include those
*(Footnote Continued Next Page)*

## Taxes (Chriskoll's Issue A)

Chriskoll claims that the trial court erred in awarding K & C damages for $300,920.82 in delinquent taxes under the terms of the amended lease. Chriskoll argues that it should have been credited for $231,365.02 in tax payments made, rendering the amount for which it is responsible $69,555.80. Appellant's Brief at 13. K & C agrees that the trial court erred in calculating the amount of delinquent taxes, but contends that the proper amount is $81,896.70. Appellee's Brief at 9. We hold that the trial court erred in calculating the amount of delinquent taxes, and we remand for the trial court to determine the proper amount.

The amended lease requires Chriskoll to pay, "at least ten (10) days before the same become due and payable to the appropriate Governmental Authority, all taxes, assessments . . . , water and sewer rents, rates and charges for public utilities, excises, levies and other governmental charges. . . ." Exhibit P-18, Amended Lease, Section 501. At trial, K & C introduced Exhibit P-25, which contains several documents relating to taxes on the 69th Street premises:

- Real Estate and Tax Records Folio Inquiry, printed May 16, 2015, showing total charges of $300,920.82, payments of $231,365.02, and a net due of $69,555.80.

_(Footnote Continued)_ ───────────

claims in its post-trial motion. **_See Diener Brick Co. v. Mastro Masonry Contractor_**, 885 A.2d 1034, 1039 (Pa. Super. 2005) ("the filing of a 1925(b) statement raising the issue is not an adequate substitute for the raising of the issue in post-trial motions").

- Delaware County Real Estate Tax bill for $2,520.00, due June 1, 2015.

- Upper Darby Township Real Estate Tax Bill for $8,964.00, due May 31, 2015.

- Upper Darby Township sewer rental charge of $779.00 due by May 31, 2015.

In determining the amount of delinquent taxes, the trial court appears to have relied exclusively on the total charges of $300,920.82 that are listed on the Folio Inquiry printed on May 16, 2015. This was error. The trial court also should have taken into account the tax payments of $231,365.02 that are shown on that same document. In addition, the trial court should have addressed Chriskoll's obligation, if any, to pay the taxes due May 31 and June 1, 2015, and the sewer rental charge due May 31, 2015, as well as any applicable late payment fees or penalties.

Based on the foregoing, we remand to the trial court with an instruction to re-calculate the damages that were based on delinquent taxes, taking into account both payments made and any obligations for taxes and charges due in May and June of 2015.

### K & C Mortgage (Chriskoll's Issues B, E)

Chriskoll claims that the trial court erred in holding that it failed to prove that there was an oral modification of the lease under which Chriskoll was allowed to offset payments it made on K & C's share of the Eagle National Bank/Irwin Franchise Capital loan against rent payments that it owed to K & C.

For this claim, we apply the following standard of review:

In the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact.  This court is bound by the trial court's findings of fact, unless those findings are not based on competent evidence.  Absent an abuse of discretion, we are bound by the trial court's assessment of the credibility of the parties and witnesses.  However, the trial court's conclusions of law are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to the facts by the trial court.

*GMH Associates, Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 898 (Pa. Super. 2000) (quotation marks and citations omitted), *appeal denied*, 795 A.2d 976 (Pa. 2000) (table).

The amended lease was in writing and stated that any modifications had to be made in writing.  *See* Exhibit P-18, Article XIV, Section 1412 ("Entire Agreement").  Nevertheless, a written contract may be modified orally, even if the contract states that modifications must be in writing.  *Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.*, 685 A.2d 141, 146 (Pa. Super. 1996).  "An agreement that prohibits non-written modifications may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing.  An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence."  *Id.* (citations omitted).

The trial court found that Chriskoll "failed to produce at trial clear and convincing evidence" that there was an oral modification of the lease.  Trial

Court Opinion, filed 10/2/15, Conclusions of Law, ¶¶ 28-29. Chriskoll argues that it proved the modification by introducing into evidence loan documents and 2007 tax returns filed by K & C, Kollias and Christie. Appellant's Brief at 14-17. We have carefully reviewed the loan documents and find no mention of the lease in those documents.[7] Similarly, we find no mention of the lease in the tax returns.[8] We understand that Chriskoll contends that the modification of the lease was oral, and that it therefore would not necessarily be documented in these writings. Nonetheless, we find nothing in these documents that required the trial court to find by clear and convincing evidence that there was an oral modification of the lease.

---

[7] As previously discussed, the loan documents show that in 2006, Chriskoll, K & C, Christie, and Kollias, as co-borrowers, obtained a loan from Eagle National Bank. The proceeds were to be used to pay off existing indebtedness owed to PNC bank ($450,000), Citizen's Bank ($150,000), and Burger King ($150,000), and sales taxes due and payable ($400,000), and to provide funds for capital improvements ($100,000). Exhibit D-6. In 2009, Chriskoll and K & C, as co-borrowers, re-financed the Eagle National Bank loan with Irwin Franchise Capital. Exhibit D-7.

[8] K & C's 2007 tax return lists a debt to Chriskoll of $222,290 at the beginning of the tax year and $314,866 at the end of the tax year. **See** Exhibit D-18, Schedule K. Nawn prepared this document. N.T. 5/20/15, at 61. Kollias testified that he signed it, but did not review it carefully. N.T. 5/18/15, 207. He also testified that he disagreed with Nawn regarding how the refinancing was treated on tax returns. **Id.** at 85. Kollias' and Christie's individual tax returns for 2007, also prepared by Nawn, each show a partnership loss of $34,172. This amount equals one-half of the partnership loss reported on K & C's tax return. **See** Exhibits D-18, D-19, D-54; N.T. 5/20/15, 151-52; 5/21/15, 23-24.

Chriskoll claims that K & C admitted during the trial that it orally agreed to modify the lease. First, Chriskoll cites the following portion of the opening statement by K & C's counsel: "But on their claim . . . for payment, repayment of a mortgage that Chriskoll paid for K & C. We acknowledge that they're entitled to . . . approximately $323,000 and change." Appellant's Brief at 15 (quoting N.T. 5/18/15, 22). However, K & C's counsel continued, "We do not believe that that constitutes either factually or legally an offset to their obligation under the lease." N.T. 5/18/15, at 23.

Chriskoll also relies on the following testimony by Kollias:

Q: Okay. On Chriskoll's counterclaim for repayment of that money, do you agree that K & C is responsible to pay Chriskoll $328,420.23 for carrying that loan?

A: Yes.

Appellant's Brief, 16 (quoting N.T. 5/22/15, at 23). However, Kollias also testified that there was no agreement that K & C was responsible to repay the PNC loan. N.T. 5/20/15, at 27. He testified that he never agreed, either individually or as a general partner of K & C, that Chriskoll could offset its rent obligations for any reason. *Id.* at 31. To the extent there was an inconsistency within Kollias' testimony, the trial court, as the finder of fact, was free to resolve this conflict. *See Gemini Equipment Co. v. Pennsy Supply, Inc.*, 595 A.2d 1211, 1214 (Pa. Super. 1991).

Chriskoll also argues that Exhibit P-28 ("Obligation to Chriskoll for Payment of PNC Mortgage") constitutes an admission that K & C agreed that

monthly rent would be reduced based on Chriskoll's payments of the Eagle National Bank/Irwin Franchise Capital loans. Appellant's Brief at 16. Exhibit P-28 was prepared by Kollias and his lawyer. N.T. 5/22/15, 21. According to K & C, it merely showed K & C's position as to the proper amount of an award to Chriskoll on its counterclaim *if* the trial court found that Chriskoll had sustained its burden of proof. Appellee's Brief at 12. Kollias testified that, as a general partner of K & C, he never agreed to repay Chriskoll for paying off the PNC mortgage, and that he never agreed to the amortization of the Eagle National Bank loan. N.T. 5/20/15, 27; 5/22/15, 5. Once again, determination of the meaning and significance of Exhibit P-28 was for the trial court.

In addition, James Rizzo testified that in the meetings he attended as an owner of Chriskoll, there was never any discussion about K & C accepting a reduction in rent based on payment of the PNC mortgage. N.T. 5/20/15, 84. The trial court found Rizzo's testimony, "which was contrary in part to his financial interest in [Chriskoll], to be very credible." Trial Court Opinion, 10/2/15, Findings of Fact, ¶ 32.

We hold that the trial court, in determining that Chriskoll failed to prove by clear and convincing evidence that there was an oral modification of the lease, based its findings of fact on competent evidence and did not abuse its discretion in assessing the credibility of the witnesses. We

therefore affirm the trial court's holding that Chriskoll failed to prove an oral modification of the lease.

**Default under the Amended Lease (Chriskoll's Issue F)**

Chriskoll claims that the trial court erred in holding that it was in default under the amended lease as of October 15, 2012, because the sum of the rent payments Chriskoll made to Christie and Kollias individually and the mortgage payments Chriskoll made to K & C's lenders exceeded the amount of rent Chriskoll was required to pay K & C.

One part of this claim relates to payments Chriskoll made to Kollias and Christie individually, which it contended were rent payments. This portion of the claim was not raised in Chriskoll's post-trial motion, and therefore it is waived. *See Lane*, 710 A.2d at 54.

The second part of this claim relates to the PNC/Eagle/Irwin loan. This issue is subsumed by Chriskoll's Issues B and E. For the reasons we previously stated, we affirm the trial court's finding that Chriskoll failed to prove by clear and convincing evidence the existence of oral modifications of the amended lease that would allow it to offset rent based on its payments to PNC/Eagle/Irwin.

\* \* \*

In sum, we: (1) reverse the trial court's award of damages for delinquent taxes and remand for a re-calculation of those damages; (2) affirm the trial court's finding that Chriskoll failed to prove that the parties

orally modified the lease; and (3) affirm on all of the issues that Chriskoll waived.

Order affirmed in part and reversed in part, and case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016