J-A22037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SANDRA SNITOW, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HOWARD N. SNITOW, LEVEL FOUR PARTNERS, L.P., LEVEL FOUR MANAGEMENT, INC., IN ITS OWN NAME AND TRADING AS LEVEL FOUR PARTNERS, L.P., | |
| Appellants | No. 2165 EDA 2016 |

Appeal from the Judgment Entered June 20, 2016
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: November Term, 2010 No. 04182

BEFORE:  BOWES, J., SOLANO, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                **FILED DECEMBER 22, 2017**

Appellants, Harold N. Snitow, individually and t/a Level Four Partners LP and Level Four Management, Inc., in its own name and t/a Level Four Partners LP, appeal from the judgment entered in favor of Appellee, Sandra Snitow, and against Appellants in the amount of $93,206.82.  We affirm.

We take the following factual and procedural background from the trial court's March 22, 2016 findings of fact, discussion, and conclusions of law (FOF & COL), January 9, 2017 opinion, and our independent review of the

_____

* Retired Senior Judge assigned to the Superior Court.

certified record. Harold Snitow (Appellant) and Appellee are the only children of the late Mildred and Melvel Snitow, and each stood to inherit fifty-percent of their parents' estate. (*See* N.T. Trial, 10/19/15, at 8-9, 30, 91). On October 6, 2003, using an initial $275,000.00 investment from his parents, Appellant created Level Four Partners, L.P. (the Limited Partnership) and Level Four Management, Inc. (the Corporation) to buy distressed real estate in Philadelphia and sell it for a profit in order to generate a higher rate of return for his parents than the percentage they were then-receiving. (*See id.* at 16-19; N.T. Trial, 10/20/15, at 55; N.T. Trial, 10/21/15, at 5-6).

The original limited partners were the Mildred and Melvel Snitow Revocable Trusts of September 16, 1991 (collectively, the Snitow Trusts). Each of the Snitow Trusts owned a 49.5% limited partnership interest in the Limited Partnership. (*See* N.T. Trial, 10/19/15, at 16-18; N.T. Trial, 10/20/15, at 78). The Corporation was named the corporate general partner, and it owned and owns the remaining one percent interest in the Limited Partnership. (*See* N.T. Trial, 10/19/15, at 17-18; N.T. Trial, 10/20/15, at 77-78). On June 6, 2004, Appellant was named the President of the Corporation and Appellee was named the Secretary and Treasurer. (*See* N.T. Trial, 10/19/15, at 25; N.T. Trial, 10/20/15, at 65-66). On December 18, 2006, Appellee became a fifty-percent stockholder of the Corporation. (*See id.* at 30-31).

Employee Denise Kelly worked for the Corporation from 2004 to 2008. (**See** N.T. Trial, 10/20/15, at 4). Although she also did work for other companies owned by, or affiliated with, Appellant, the Corporation paid 100% of her salary. (**See** N.T. Trial, 10/19/15, at 141-42; N.T. Trial, 10/20/15, at 5, 13-15).

Pursuant to the Agreement for the Limited Partnership (LPA), all of the authority to act on behalf of the Limited Partnership was vested in the corporate general partner, *i.e.*, the Corporation, and the limited partners were not authorized to conduct any management or control. (**See** LPA, at unnumbered page 17 ¶¶ 9.2, 9.6). In addition, the LPA provides that the corporate opportunity doctrine would not apply, and that each partner or affiliate of the Limited Partnership could pursue other business opportunities without providing notice to the other partners or the Limited Partnership. (**See id.** at unnumbered page 17 ¶ 9.3).

In December 2004, the Corporation purchased a sport utility vehicle (SUV) for the sum of $44,814.14. (**See** N.T. Trial, 10/19/15, at 36-37; N.T. Trial, 10/20/15, at 110; N.T. Trial, 10/21/15, at 21-22). According to Appellant, the vehicle was purchased to assist in the investigation and acquisition of properties for Level Four Partners, and so that he was able to get to his parents if they had medical needs. (**See** N.T. Trial, 10/21/15, at 21-23). The vehicle was titled in the name of the Corporation, insured by the Corporation, and the Corporation paid all vehicle expenses. (**See** N.T. Trial,

10/21/15, at 23-24; N.T. Trial, 10/22/15, at 57-58; Exhibit P-3, Commerce Bank Checks from Corporation to Infiniti of Ardmore).  On June 6, 2005, knowing of Appellant's use of the Corporation's funds to purchase the aforementioned vehicle, and with Mildred Snitow's approval, Appellee wrote a $45,000.00 check to herself from her parents' account.  (**See** N.T. Trial, 10/19/15, at 90-91; N.T. Trial, 10/22/15, at 57).  Melvel and Mildred Snitow also paid for Appellee's health insurance.  (**See** N.T. Trial, 10/21/15, at 145).  Mildred Snitow passed away in late 2005, with her assets transferring to the Melvel Snitow Trust.  (**See** N.T. Trial, 10/19/15, at 9, 14).

From January 2006 to October 2007, the Limited Partnership returned and distributed to the Melvel Snitow Trust the collective sum of $200,000.00.  (**See** N.T. Trial, 10/21/15, at 14).  When Melvel Snitow died on December 2, 2007, his ninety-nine percent interest in the Limited Partnership, by operation of law, passed in equal shares to Appellant and Appellee, and both became full limited partners.  (**See** N.T. Trial, 10/19/15, at 16, 109; N.T. Trial, 10/20/15, at 60-61).  However, the Limited Partnership generated no income from October 5, 2007 until the checking account was closed.  (**See** N.T. Trial, 10/21/15, at 14, 26-27).

At a September 23, 2004 Sheriff Sale, the Limited Partnership, the Hindman and Associates Defined Benefit Plan (the Hindman Plan), and Alan Snitow, acquired the property at 1401 Reed Street.  (**See id.** at 49-50).  The Limited Partnership paid $42,874.00 for its forty-percent interest.  (**See id.**).

The Hindman Plan is owned by Barbara Hindman, Appellant's longtime girlfriend; Alan Snitow is Appellant's son. (*See* N.T. Trial, 10/20/15, at 17-20, 22).

On March 4, 2010, Appellant requested that each of the co-owners of the Reed Street property contribute money for its repair. (*See* N.T. Trial, 10/19/15, at 61-63; Exhibit P-8, Letter from Appellant to Co-Owners of Reed Street Property, 3/04/10). Also in 2010, on the advice of outside counsel, Appellant mailed out a notice for an April 19, 2010 special meeting of the Limited Partnership to Appellee and himself regarding 1401 Reed Street. (*See* N.T. Trial, 10/21/15, at 63, 99). This was the only meeting ever scheduled for the Limited Partnership. On April 11, 2010, Appellee sent Appellant correspondence advising that she could not attend the meeting, and requesting that it be rescheduled. (*See* N.T. Trial, 10/19/15, at 72). On May 26, 2010, Appellant mailed Appellee a letter demanding that she approve the sale of 1401 Reed Street to a buyer identified in the letter as only "the Buyer," and threatened legal action if she did not approve the sale. (Exhibit P-11, Letter from Appellant to Appellee, 5/26/10, at unnumbered page 2). He gave Appellee until June 3, 2010 to agree or the "Buyer" would proceed with legal action. (*See* N.T. Trial, 10/19/15, at 72-76). The unidentified buyer was Appellant's girlfriend, Barbara Hindman (or the Hindman Plan). (*See id.* at 73). This was the first Appellee became aware of potential legal issues involving Appellants, and she obtained counsel. (*See id.* at 72).

On June 18, 2010, without Appellee's approval, Appellant sold the Limited Partnership's forty percent interest in 1401 Reed Street to the Hindman Plan for $54,000.00. (**See id.** at 77-79). Even though none of 1401 Reed Street's owners had paid any of the $64,997.15 of the repair expenses identified in Appellant's March 4th request, the Limited Partnership's share of those expenses ($26,998.86) was deducted from the sale price. (**See** N.T. Trial, 10/20/15, at 31-34). In 2012, Appellee received a check for $21,620.27, which was Appellant's calculation of her share of the proceeds from the sale of 1401 Reed Street to the Hindman Plan. This was the only distribution Appellee ever received from Level Four. (**See** N.T. Trial, 10/19/15, at 81-82, 121-22). She placed the money in escrow.

On December 1, 2010, Appellee commenced this action by filing a complaint in her individual capacity against Appellant, the Limited Partnership, and the Corporation. On February 18, 2011, the trial court appointed Morris Schwalb, CFE, CFF, CPA of GPCD Partners, LLC (GPCD) to prepare a forensic accounting of the financial and business records of the Limited Partnership and the Corporation. On February 10, 2012, the court appointed Joseph Bernstein as receiver to take immediate possession of the properties owned by the Limited Partnership and to appraise and sell all of them, then create and maintain an escrow account in the name of the Limited Partnership. Because Appellant had not prepared any tax returns for Level Four, the court also ordered the preparation and filing of tax returns for the years 2004-2011.

On October 19, 2015, a four-day trial commenced in this action. At trial, the parties presented competing experts who had reviewed the GPCD forensic audit.

GPCD found that, at best, "[Appellant's] practices in regard to Level Four were negligent[.]" (Exhibit P-18, GPCD Forensic Audit, at 1). The report stated that, "[i]n [his] fiduciary capacity, [Appellant] did pass on some costs to Level Four . . . that should have been better shared by the many entities [Appellant] had some financial or other interest in." (*Id.* at 2). Also, "[Appellant] in his capacity as the managing partner reimbursed himself for automobile, parking, health insurance, cell phone, and various other expenses." (*Id*). GPCD also opined that Appellant's keeping of bank account statements "is not an accepted method for recording accounting transactions[.]" (*Id.* at 1). According to GPCD, Denise Kelly's salary was the most significant category in which improper expenses were charged to Level Four, and it disallowed ninety percent of her salary and payroll taxes for the period of 2004 to 2008. (*See* Exhibit P-18, GPCD Forensic Audit, at Exhibit I, Disallowed Salary: Denise Kelly; N.T. Trial, 10/21/15, at 118). In short, GPDC determined, among other things, that Appellant made several improper payments related to Level Four Properties and incurred inappropriate personal expenses, and that Level Four paid 100% of business expenses that should have been allocated between several business entities. (*See, e.g.*, GPCD Forensic Accounting, at Exhibit V, Disallowed Debit Memos; Exhibit IX,

Communications; Exhibit XII, Disallowed Expenses). GPCD found there was a total shortfall amount of $278,278.79. (*See id.* at 2, 9).

Appellee's forensic accounting expert, Stephen J. Scherf of Asterion, testified that he reviewed the GPCD report and the underlying documents relied upon therein. (*See* N.T. Trial, 10/20/15, at 106). He stated that he had several adjustments, but overall he agreed with GPCD's findings. (*See id.* at 108-09). Mr. Scherf opined that Level Four suffered a total damage amount of $502,804.00 (without pre-judgment interest), with fifty percent of that allocable to Appellee. (*See* N.T. Trial, 10/20/15, at 126-27; Exhibit P-41, Asterion Report, at Table 1, Summary of Diverted Funds; Exhibit P-42, Asterion Report, at Table 6, Summary of Damages to Level Four).

Appellant's forensic expert, Peter Cordua, opined that both GPCD and Asterion made errors and overstatements. For example, he determined that $92,684.98 of the $278,278.79 in disallowed expenses found by GPCD should have been allocated to Ms. Kelly's payroll for work for Level Four from 2004 to 2008. (*See* N.T. Trial, 10/21/15, at 122). He also concluded that the total damages were $7,375.12. (*See* N.T. Trial, 10/22/15, at 19-20).

On March 22, 2016, the trial court found that Appellee proved all elements of her breach of fiduciary duty and breach of contract claims, and that Appellant should be held personally liable under a theory of piercing the corporate veil. (*See* Trial Court FOF & COL, 3/22/16, at 16-19). The court awarded total damages to Appellee in the amount of $93,206.82, including

prejudgment interest. The court provided a thorough breakdown of how it reached this number and, in large part, where the experts disagreed, it found the findings of Mr. Cordua to be more credible and in line with the evidence presented than that of GPCD and Mr. Scherf. (*See id.* at 19-29). The court denied Appellee's request for punitive damages. (*See id.* at 29-30).

Both Appellants and Appellee filed timely post-trial motions that the court denied on June 17, 2016. Appellants timely appealed.[1]

Appellants present five questions for this Court's review:

1. Did the trial court err as a matter of law by failing to adjust the damages awarded to [Appellee] to a total amount of $0.00 because all damages awarded accrued solely to the [L]imited [P]artnership and not individually to [Appellee], where she did not assert any derivative claims?

2. Did the [c]ourt err by awarding damages for breach of fiduciary duty and breach of contract, which accrued prior to November of 2008 and November of 2006 respectively, as such claims were barred by the statute of limitations?

3. Did the [c]ourt err by awarding prejudgment interest outside of the statute of limitations period, or at least when [Appellee] would have first been entitled to bring a claim, *i.e.* December 2, 2007 and/or accruing only as damages were accrued (*i.e.* prejudgment interest on the 2010 Reed Street transfer would only accrue from June 2010, not [twelve] years)[?]

4. Did the [c]ourt err by not applying the gist of the action doctrine and awarding damages on both tort and contract claims?

5. Did the [c]ourt err in awarding damages based on the 2010 Reed Street transfer and the award of tax penalties?

---

[1] On July 25, 2016, Appellants filed a timely statement of errors complained of on appeal pursuant to the trial court's order. *See* Pa.R.A.P. 1925(b). The court entered an opinion on January 9, 2017. *See* Pa.R.A.P. 1925(a).

(Appellants' Brief, at 2-3).

Our standard of review of this matter is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664-65 (Pa. Super. 2014) (citation omitted).

In their first argument, Appellants maintain that "[Appellee] lacked standing to assert claims for damages to the [L]imited [P]artnership, and the [t]rial [c]ourt erred in awarding her damages accruing solely to the Limited Partnership." (Appellants' Brief, at 21) (emphasis and some capitalization omitted); (***see id.*** at 22-34). Appellants' claim lacks merit.

Whether or not an action by a limited partner is direct or derivative in nature

> depends on whether the primary injury alleged in the complaint is to the partnership or to the individual plaintiff[]. When a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his contribution or

- 10 -

interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership.

*Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 957 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1099 (Pa. 2013) (citation omitted).

However, pursuant to section 8591 of the Pennsylvania Revised Uniform Limited Partnership Act (PRULPA), "[a] derivative action may not be maintained if it appears that the plaintiff cannot fairly and adequately represent the interests of the limited partners in enforcing the rights of the partnership." 15 Pa.C.S.A. § 8591.[2]

Here, Appellee cannot "fairly and adequately represent the interests of the limited partners" in this matter. *Id.* Appellee and Appellant, as the only two partners of the Limited Partnership, and equal shareholders in the Corporation, do not share a common interest. Indeed, their interests are

_____

[2] Section 8591, and the entire version of the PRULPA in effect at all times relevant to this action, were repealed and replaced, effective February 21, 2017. However, the prior version is applicable in considering this matter. *See Gordon v. Gordon*, 439 A.2d 683, 708 (Pa. Super. 1981), *aff'd*, 449 A.2d 1378 (Pa. 1982) (It is a "fundamental rule of statutory construction that statutes, other than those affecting procedural matters, must be construed prospectively except where the legislative intent that they shall act retrospectively is so clear as to preclude all questions as to the intention of the legislature.") (citations omitted).

directly opposed to each other where any gain realized by Appellee in bringing this action equals a corresponding loss to Appellant.[3]

Also, as observed by our Supreme Court:

> Ordinarily it is improper for a court to order a payment due to a corporation to be made directly to a shareholder where the corporation is, or can be, a party. The proper procedure is to have payment made to the corporate treasury, for distribution therefrom, since the conversion of corporate property is an injury to the corporation and not directly to the individual shareholders. **But there are circumstances here which [are] distinguish[able.] No rights of third persons are involved. All the shares are owned or controlled by the parties to this litigation. The corporation is no longer in business[.]** . . . **Under these conditions no advantage can be gained by going through the form of payment, first, into the corporate treasury, and then of distribution to the individual shareholders.**

*Sale v. Ambler*, 6 A.2d 519, 521 (Pa. 1939) (emphasis added).

Similarly, here, even if Appellee could adequately represent the interests of all partners/shareholders, there would be no advantage gained by bringing the claims as a derivative action. There are no third party rights involved, Appellant and Appellee are the only shareholders and partners, and Level Four is in receivership. "Certainly [A]ppellant should not complain, for [he] would thus be required to advance the full amount of the claim, and then proceed [himself] against the [C]orporation [and Limited Partnership] for the

---

[3] The trial court found that Level Four's corporate form should be disregarded, and that Appellant should be held individually liable for the damages he caused. (*See* Trial Ct. FOF & COL, at 18-19 ¶¶ 9-14).

proportion represented by [his] shares." ***Id.*** Hence, we conclude that the trial court did not abuse its discretion or commit an error of law when it found that Appellee properly brought her claims directly. ***See*** 15 Pa.C.S.A. § 8591; ***Sale***, ***supra*** at 521; ***Stephan***, ***supra*** at 664-65; ***Weston***, ***supra*** at 957.[4] Appellants' first issue lacks merit.

In their second claim, Appellants argue that Appellee's breach of fiduciary duty claims are barred by the statute of limitations. (***See*** Appellants' Brief, at 34-39). Appellants are due no relief.

Breach of fiduciary duty claims are subject to a two-year statute of limitations. ***See*** 42 Pa.C.S.A. § 5524(7).

> [T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations, even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy[.]

***Wilson v. El-Daief***, 964 A.2d 354, 356 (Pa. 2009) (citation omitted).

However, the discovery rule creates an exception to this general tenet.

---

[4] We also are not legally persuaded by Appellants' observation that, under section 8635 of the current PRULPA, limited partners do not owe a fiduciary duty to each other. (***See*** Appellants' Brief, at 21 n.5). As discussed previously, (***see supra*** at 11 n.2), the version of the PRULPA that was in effect at the time relevant to this matter applies, not the current version. Under section 8334(a) of the former PRULPA, partner accountable as fiduciary, "[e]very partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property." 15 Pa.C.S.A. § 8334.

The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable. The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured[.]

As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. As we have stated: [T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. . . .

*Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (citations and quotation marks omitted).

Here, the trial court found:

. . . [Appellee's] injury and its cause were not discoverable until 2010—that is, until the events surrounding the sale of 1401 Reed Street. And at that time, [Appellee] engaged counsel, performed further investigation, and filed her first complaint on November 30, 2010. As such, [Appellee] was entitled to collect for damages accruing prior to the standard limitation periods of November 2008 for breach of fiduciary duty . . . based on commencement of the instant matter, because pursuant to the discovery rule, the limitation periods for those damages did not begin to run until around May of 2010.

(Trial Court Opinion, 1/09/17, at 26).

We agree with the trial court. Although Appellee had access to the relevant financial information beforehand, there had to be "some reason to awaken inquiry and direct diligence in the channel in which it would be

- 14 -

successful." ***Fine***, ***supra*** at 858 (citation omitted).  It was not until the sale of the 1401 Reed Street property that she had "reason to inform [herself] of the facts upon which [her] right to recovery is premised." ***Id.***  Appellants' second issue lacks merit.

In their third challenge, Appellants maintain that the breach of fiduciary duty claim is barred by both the gist of the action and the economic loss doctrines.  (***See*** Appellants' Brief, at 40-45).  We disagree.

> The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; [or] 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.  The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of breaches of duties imposed by mutual consensus agreements between particular individuals, while the latter arises out of **breaches of duties imposed by law as a matter of social policy**.

***B.G. Balmer & Co., Inc. v. Frank Crystal & Co., Inc.***, 148 A.3d 454, 469 (Pa. Super. 2016), *appeal denied*, 2017 WL 1015542 (Pa. filed March 14, 2017) (citations and footnote omitted; emphasis in original).

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

***Id.*** (citations omitted).

In this case, the trial court explained:

. . . [Appellee] proved all the elements of her breach of fiduciary duty claim. It is well-settled within this Commonwealth that "partners owe a fiduciary duty one to another." *Clement v. Clement*, 260 A.2d 728, 729 (Pa. 1970) [(citations omitted)]. A claim for breach of fiduciary duty requires the plaintiff to demonstrate that: the defendant negligently or intentionally (1) failed to act in good faith and solely for the benefit of the plaintiff or (2) failed to use reasonable care in carrying out his duties; the plaintiff suffered injury; and the defendant's failure to (1) act solely for the plaintiff[']s benefit or (2) use the skill and knowledge demanded of him by law was a real factor in bringing about the plaintiff's injuries. [*See*] Pa. SSJI (Civ.) § 6.210 (2014).

[Appellee] and [Appellant] have been [fifty percent] partners in [the Limited Partnership] since 2007. As such, [Appellant] and [the Corporation] owed fiduciary duties to [Appellee] as of that date and his parents before that, and this [c]ourt found they breached those duties in a number of ways, including by allocating all of Denise Kelly's salary to Level Four and selling [the Limited Partnership's] percentage of 1401 Reed Street to the Hindman Plan for less than market value.

. . . [Appellee] also proved all the elements of her breach of contract claim. Three elements are necessary to establish a breach of contract claim: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. [*See*] *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. [] 1999). Here, the contract at issue was the LPA, provisions of which included:

> 7.2. <u>Expenses Incurred by the General Partners</u>. The General Partners shall be entitled to charge the Partnership, and to be reimbursed by it, for any and all costs, overhead, and expenses incurred by them **in connection with the Partnership**. . . .

(P-15, LPA, at unnumbered page 12 ¶ 7.2 (emphasis added)). Relying on this provision, the [c]ourt also found [Appellant] and [the Corporation] breached the LPA in a number of ways, including by allocating all of Denise Kelly's salary to Level Four which was

not an expense incurred by them solely in connection with the Partnership.

\* \* \*

[Appellee's] breach of fiduciary duty claim did not arise solely from the contractual relationship between the parties. . . .

For example, as discussed above, this [c]ourt found selling [the Limited Partnership's] percentage of 1401 Reed Street to the Hindman Plan for less than market value to be a breach of fiduciary duty, but not a breach of the LPA. Thus, [Appellee's] breach of fiduciary duty claim did not arise solely from the breaches of duties imposed by the LPA, but rather also arose from breaches of duties imposed by law as a matter of social policy. As such, neither did all the liability in this case stem from breach of contract, but rather some was predicated upon larger social policies embodied in the law of torts. . . .

(Trial Ct. Op., at 23-25) (some record citation formatting provided). We agree with the reasoning of the trial court.

Based on the foregoing and our independent review, we conclude that the trial court did not abuse its discretion or commit an error of law in finding that the breach of fiduciary duty claim was not barred by the gist of the action doctrine. *See Stephan*, *supra* at 664-65. Additionally, because Appellee's recovery was not based solely on the contractual relationship, the economic recovery rule does not apply to prohibit her recovery. *See Debbs v. Chrysler Corp.*, 810 A.2d 137, 164 n.32 (Pa. Super. 2002), *appeal denied*, 829 A.2d 311 (Pa. 2003) ("Generally, the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows **only** from a contract.") (citation and internal quotation marks omitted; emphasis added). Appellants' third claim does not merit relief.

- 17 -

In their fourth issue, Appellants claim that "the trial court's decision on damages relating to the [1401] Reed Street transfer was against the weight of the evidence, where the documentary evidence and [Appellant's] testimony establish that he relied upon a contemporaneous appraisal of the value of the property at $135,000 . . . ." (Appellants' Brief, at 45).  This issue is waived and would not merit relief.

Pursuant to Pennsylvania Rule of Appellate Procedure 2119(a)-(b), an appellant is required to provide pertinent law and discussion in support of each issue.  **See** Pa.R.A.P. 2119(a)-(b).  Here, in the one paragraph dedicated to this argument, Appellants fail to provide any law, pertinent or otherwise, and only include one sentence about Appellant's testimony.  (**See** Appellants' Brief, at 45).  Therefore, their claim is waived.  **See Giant Food Stores, LLC v. THF Silver Spring Development, LP**, 959 A.2d 438, 444 (Pa. Super. 2008), *appeal denied*, 972 A.2d 522 (Pa. 2009) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.  Failure to do so constitutes waiver of the claim.") (citations and internal quotation marks omitted).  Moreover, it would not merit relief.

"[T]his Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the evidence 'unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.'" **Gutteridge v. J3 Energy**

***Group, Inc.***, 165 A.3d 908, 914 (Pa. Super. 2017) (citation and internal quotation marks omitted).

In this matter, the trial court found:

First, evidence of the appraisal valuing 1401 Reed Street at $135,000 was struck from the record as hearsay, except for the limited purpose of establishing [Appellant's] state of mind. (***See*** N.T. Trial, 10/21/15, at 72-73). Nevertheless, [Appellants] attempt to ignore the [c]ourt's ruling and rely on the appraisal for the truth of the matter, which cannot be allowed.

Second, [Appellants] have failed to establish that the [c]ourt's valuation of 1401 Reed Street was against the weight of the evidence. [Appellants] did not present any evidence that 1401 Reed Street was worth $135,000 in 2010 other than [Appellant's] own testimony. The [c]ourt, however, did not find his testimony on this point credible. . . . Moreover, there was evidence that 1401 Reed Street was worth more than $210,000. Specifically, [Appellant] later advertised the property for sale at $425,000 and he also stated during litigation that 1401 Reed Street was worth $325,000[.] (***See*** N.T. Trial 10/19/15, at 61; N.T. Trial, 10/20/15, at 121).

Instead of valuing the property at $135,000, $325,000, or $425,000, the [c]ourt used the $210,000 value assigned to the property by 2006/2007 agreements of sale as a middle figure and a fair approximation of its value in 2010. And doing so was not an abuse as it was within this [c]ourt's discretion[.]

(Trial Ct. Op., at 29-30) (some record citation formatting provided; quotation mark omitted).

Based on the court's explanation and Appellants' failure to prove that "the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence," we will not overrule its finding regarding the value of the 1401 Reed Street Property. ***Gutteridge***, ***supra*** at

914 (citation and internal quotation marks omitted). Appellants' fourth issue would lack merit, even if it were not waived.

In their fifth through seventh claims of error, Appellants argue that the trial court erred in granting IRS penalties, twelve years of prejudgment interest, and one-half value for the offsetting credits. (*See* Appellants' Brief, at 46-49). To the extent they can be reviewed, Appellants' issues lack merit.

In their fifth challenge, Appellants argue that the trial court's award of IRS penalties was in error where it made no finding that they were incurred due to Appellant's bad faith and because they still are open to abatement. (*See id.* at 46-47). This issue is waived.

Appellants failed to provide any law or pertinent discussion in support of their argument. Therefore, because their argument on this claim is not sufficiently developed to enable this Court's review, it is waived. *See Giant Food Stores, LLC*, *supra* at 444.

Moreover, we cannot find that the trial court abused its discretion or committed an error of law in ordering IRS penalties. *See Stephan*, *supra* at 664-65. Specifically, the court stated:

> First, finding these damages sufficiently certain so as to award damages was supported by the record. (*See* N.T. Trial, 10/20/15, at 118-19, 124-25; Exhibit P-42, Asterion Report, at Table VI, Summary of Damages). Second, the [c]ourt also found these penalties likely underrepresent the total amount owed to the IRS, which was also supported by the record. (*See* N.T. Trial, 10/20/15, at 139). This coupled with the fact that many of these penalties are several years old and there was no indication [Appellant] had made any effort whatsoever to abate or challenge

them really leaves [Appellants] no basis to complain regarding this category of damages.

(Trial Ct. Op., at 31-32) (some record citation formatting provided).

After our independent review of the certified record, and Appellants' failure to provide pertinent discussion, we conclude their argument regarding IRS penalties would not merit relief.

In their sixth claim, Appellants maintain that it was error to award Appellee twelve years of prejudgment interest on the entire judgment. (*See* Appellants' Brief, at 47-48). This issue lacks merit.

The trial court explained:

. . . [I]n their post-trial motion [Appellants] argued:

the Court determined that in 2004, Denise Kelly's payroll disallowance would appropriately be $6,016, but also allowed [Appellant] Snitow's loan offset of $5,200. Thus, interest would accrue for [twelve] years only on the awarded amount for 2004 of one half of $816.00 (($408.00 x .06) x12=$293.76). Each successive year's awards [sh]ould be equally allocated. In 2005, the Denise Kelly payroll disallowance was $16,400.98, offset by the allowed loan of $5,441 and the Unidentified Real Estate adjustment of $3,185. Thus, interest would accrue for [eleven] years only on the awarded amount of one half of $7,774.98 ($3,887.49 x .06) x 11=$2,565.74).

(Appellants' Motion for Post-Trial Relief, at 5-6 ¶ 10).

Calculating pre-judgment interest in such a way would be beyond burdensome on the [c]ourt, particularly where [Appellants] never provided a complete alternative calculation of such damages. . . .

"An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been to

break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case. . . ." ***Murray Hill Estates, Inc. v. Bastin***, 276 A.2d 542, 545 (Pa. 1971) (quotations omitted). Thus, "[u]nless a case be found, which is conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing[.]" [*I*]*d.* (quotations omitted)[.] [This] leads the [c]ourt to its final point which is that it could award pre-judgment interest as a matter of equity, and equity dictated in this case that pre-judgment interest be awarded from when [Appellant] Snitow's breaches began in 2004 in order to fully compensate [Appellee] for not fairly dealing with her.

"Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court." ***Somerset Community Hospital v. Allan B. Mitchell & Associates***, 685 A.2d 141, 148 (Pa. Super. [] 1996). Thus, while pre-judgment interest is awardable as of right in contract cases, it is also awardable as a matter of equity in other cases. [***See***] ***Kaiser v. Old Republic Ins. Co.***, 741 A.2d 748, 755 (Pa. Super. [] 1999). "Pre-judgment interest in such cases is a part of the restitution necessary to avoid injustice." ***Id.***

Here, the [c]ourt found both breach of contract and breach of fiduciary duty and considerations of justice and fair dealing[5]

_____

[5] After oral argument in this matter, the parties were provided the opportunity to brief the issue of what impact, if any, the Pennsylvania Supreme Court's holding in ***Hanaway v. Parkesburg Group, LP***, ___ A.3d ___, 2017 WL 3600580 (Pa. filed Aug. 22, 2017), has on the matter before us. (***See*** Order, 8/30/17). After reviewing the briefs of the parties and independently reviewing ***Hanaway***, we conclude that it does not impact this appeal. The plaintiffs in ***Hanaway*** brought a breach of contract claim premised on the general partner's alleged breach of the implied covenant of good faith and fair dealing because there was nothing in the limited partnership agreement limiting his actions. ***See Hanaway***, ***supra*** at *3. However, here, Appellee did not raise a claim under the implied covenant of good faith and fair dealing; she brought a breach of contract and breach of fiduciary duty claim. (***See*** Post-Argument Submission of Appellee, at 5; ***see also*** LPA, at unnumbered

dictated the pre-judgment interest award. While the [c]ourt did not find [Appellant] Snitow's conduct as egregious as [Appellee] suggested, since 2004 he had been playing fast and loose with Level Four's funds. Moreover, his conduct did quite a bit to delay resolution of this matter, particularly in its early stages and with his lack of cooperation with the court-appointed forensic accountant. The best way to fully compensate [Appellee] and avoid injustice in this case was to award her pre-judgment interest from when [Appellant] Snitow's bad acts began.

(Trial Ct. Op., at 27-28) (some record citation formatting provided).

We discern no abuse of discretion or error of law by the trial court. **See Stephan**, **supra** at 664-65. Although Appellee did not become a partner in the Limited Partnership, or a shareholder in the Corporation, until 2007, her fifty percent interest in the estate of her parents preceded that date. Since 2004, when Appellant started Level Four, he has depleted the money owed to Appellee. Appellants' sixth claim lacks merit.

In their seventh issue, Appellants argue that the trial court erred in its award of offset credit. (**See** Appellants' Brief, at 49). However, Appellants provided only two sentences in support of this challenge, which contain no

_____

page 18 ¶ 9.10, Fiduciary Capacity ("The General Partners shall at all times exercise their responsibilities in a fiduciary capacity . . . ."); **Clement**, **supra** at 729 (In this Commonwealth, "partners owe a fiduciary duty one to another."). Therefore, the Pennsylvania Supreme Court's holding, that "the implied covenant of good faith and fair dealing is inapplicable to [] Pennsylvania limited partnership agreement[s] . . . formed [] before the enactment of amendments that codified such a covenant," is inapplicable to the case before us. **Hanaway**, **supra** at *1 (footnote omitted). We will not find that the trial court's brief reference to "justice and fair dealing" renders the totality of its judgment unsound where ample evidence exists from which the court could find that Appellant failed to perform his fiduciary duty.

law, discussion, or citation to the certified record. (***See id.***). Therefore, this Court is precluded from conducting any meaningful review, and this issue is waived. ***See*** Pa.R.A.P. 2119(a)-(b); ***Giant Food Stores, LLC***, ***supra*** at 444.[6]

Judgment affirmed.

Judge Bowes joins the Memorandum.

Judge Solano files a Concurring and Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2017

---

[6] The trial court briefly addressed this matter, as follows:

> . . . [I]n an effort to be fair to all the parties in this case, the [c]ourt sifted through the numerous categories of potential damages to reach a fair and just verdict, which took a lot of time and effort. However, if there was some isolated error in failing to award [Appellants] enough credit in one category, it is just as likely there was some isolated error in failing to award [Appellee] enough damages in another. The verdict as whole, though, is without question fair and just and should not be disturbed.

(Trial Ct. Op., at 32). Although the trial court does not provide a detailed explanation, because Appellants failed to provide any argument about what exactly they assert the court should have done differently, we cannot find that the court abused its discretion or committed an error of law in this regard. ***See Stephan***, ***supra*** at 664-65. This issue would lack merit.